**T. J. FOUNTAIN, Jr., individually and doing business as Fountain Oil Company, Plaintiff-Appellant,**

v.

**METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY, Defendant-Appellee.**

No. 81–7077.

United States Court of Appeals, Eleventh Circuit.

June 18, 1982.

George P. Dillard, Decatur, Ga., for plaintiff-appellant.

Kutak, Rock & Huie, Charles N. Pursley, Jr., Robert A. Boas, Atlanta, Ga., for defendant-appellee.

Before VANCE, KRAVITCH and CLARK, Circuit Judges.

VANCE, Circuit Judge:

Appellant T. J. Fountain, Jr. appeals from the district court order dismissing his complaint. The district court dismissed for lack of subject matter jurisdiction two counts of appellant's complaint alleging denial of his federal constitutional rights. Additionally, the court dismissed a third count of the complaint alleging denial of a federal statutory right for failure to state a claim upon which relief can be granted and declined to exercise jurisdiction over several pendent state claims. We affirm the dis-

missal of Fountain's statutory claim but we reverse the district court's decision as to subject matter jurisdiction over the constitutional claims. At the same time, we believe that the district court should abstain from hearing this case pending the resolution of a parallel claim in state court. Accordingly, we vacate in part the judgment of the district court and remand.

I.

Appellant owns a gasoline service station located at the northeastern corner of the intersection of Howard Avenue and East Lake Drive in Decatur, Georgia. Howard Avenue runs from east to west and is parallel to a nearby railroad track; East Lake Drive runs from north to south, crossing both Howard Avenue and the railroad track at street level. The Metropolitan Atlanta Rapid Transit Authority (MARTA), a state created agency,[1] proposed to extend the east line of its subway system through Decatur, running between Howard Avenue and the railroad track, slightly to the north of appellant's service station. MARTA also planned to build a subway station in the vicinity of East Lake Drive.

It became apparent that MARTA's trains would not be able to stop at the intersection of East Lake Drive and MARTA's east line due to problems with the grade of the land there. Consequently, during construction of the east line MARTA built the station a short distance to the west of East Lake Drive. In doing so, MARTA also relocated East Lake Drive to the west, away from appellant's service station, and permanently closed the old East Lake Drive north of the service station. According to the complaint, MARTA blocked off both Howard Avenue and East Lake Drive throughout the period of construction and prevented all vehicular access to appellant's service station. Appellant also alleges that after the completion of the new East Lake Drive and the nearby portion of the east line, the old East Lake Drive remained closed to through traffic, partially impairing access to the service station.

---

1. *See* 1965 Ga.Laws 2243 (uncodified).

MARTA lowered the new East Lake Drive to run beneath Howard Avenue and the subway and railroad tracks, necessitating a change in the area's surface water drainage patterns. Specifically, MARTA determined that it had to construct a dam and a new drainage retention pond in the area. MARTA selected a pond location that included the northern portion of appellant's property.

MARTA does not have any statutory power of eminent domain. *See* 1965 Ga. Laws 2243, 2266 (uncodified).[2] To implement any of its plans, therefore, MARTA must rely on the county or municipality involved to exercise its powers of eminent domain on behalf of MARTA. *See Metropolitan Atlanta Rapid Transit Authority v. Datry*, 235 Ga. 568, 572–73, 220 S.E.2d 905, 909 (1975). Accordingly, in January 1976 DeKalb County brought a condemnation action in state court on behalf of MARTA seeking a permanent easement to construct and maintain the dam and drainage retention pond on appellant's property, as well as a temporary construction easement. MAR-

TA did not deem it necessary to seek condemnation of appellant's property for the alleged impairment of access to the service station during construction of the subway line or thereafter. Appellant counterclaimed in the condemnation suit, however, for damages resulting from the street closings. After extensive legal proceedings, the state court awarded $7,020 in damages for the easements, but dismissed the counterclaim.[3] The state court determined that the counterclaim was independent of the condemnation action and could only be heard in a separate lawsuit.

While the condemnation case was pending on a second appeal from final judgment, appellant instituted the present action in the United States District Court for the Northern District of Georgia. Appellant's complaint was essentially one for inverse condemnation. Specifically, the complaint alleged that the street closings amounted to a taking of appellant's property for a public use without just compensation, in violation of the fifth and fourteenth amendments.[4]

2. Section 12 of MARTA's enabling statute, 1965 Ga.Laws 2243, 2266 (uncodified), provides:

The Authority shall have no power of eminent domain, but the City of Atlanta and the counties of Fulton, DeKalb, Cobb, Clayton and Gwinnett may, for purposes of the Authority, exercise the broadest power of eminent domain available to them or any agency or joint agency thereof, under any statute, and convey to the Authority any property so acquired upon payment or credit for the total cost of any acquisition hereunder.

3. Originally, DeKalb County brought a condemnation action against appellant in the DeKalb County Superior Court. The court refused to entertain the counterclaim and appellant brought an interlocutory appeal. The Georgia Supreme Court dismissed the appeal on the grounds that it would not permit piecemeal appellate review absent a certificate of immediate review. *Fountain v. DeKalb County*, 238 Ga. 14, 231 S.E.2d 49 (1976). The case went to trial and appellant was awarded damages. Appellant again appealed. The court of appeals held that the trial court's refusal to entertain the counterclaim was proper, but nonetheless reversed the case on other grounds. *Fountain v. Metropolitan Atlanta Rapid Transit Authority*, 147 Ga.App. 465, 249 S.E.2d 296 (1978). A new trial was held and appellant was awarded damages of $7,020. On appeal, the Georgia

Court of Appeals reaffirmed its earlier holding that the counterclaim was not properly raised in the condemnation proceeding because the claim did not arise out of the limited transactions involving the drainage retention pond. *Fountain v. DeKalb County*, 154 Ga.App. 302, 267 S.E.2d 903 (1980).

4. The just compensation clause of the fifth amendment provides:

nor shall private property be taken for public use, without just compensation.

U.S.Const., amend. V.

Appellant's complaint is somewhat ambiguous in this regard as it could be read to ground the just compensation claim only on the fifth amendment. The fifth amendment protects appellant only from the federal government's actions and does not provide appellant with a direct claim for takings by the state. *Fallbrook Irrigation Dist. v. Bradley*, 164 U.S. 112, 158, 17 S.Ct. 56, 63, 41 L.Ed. 369 (1896). The just compensation clause of the fifth amendment, however, has been incorporated into the fourteenth amendment to restrict state conduct by the same standard regulating the federal government. *Chicago B. & Q. R.R. v. City of Chicago*, 166 U.S. 226, 239, 17 S.Ct. 581, 585, 41 L.Ed. 979 (1897); *Lenoir v. Porters Creek Watershed Dist.*, 586 F.2d 1081, 1095 (6th Cir. 1978). We construe the complaint liberally, however, to interpret it to base this claim on both the fifth and fourteenth amendments.

The complaint further alleged that MARTA's actions deprived him of due process and equal protection of the laws, in violation of the fourteenth amendment.[5] Appellant's final federal claim alleged a denial of his rights under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970.[6] Additionally, appellant raised pendent state claims, alleging parallel violations of the state constitution and common law trespass. Appellant sought compensatory damages, punitive damages, and attorneys fees.

MARTA moved to dismiss the suit for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. The district court dismissed the suit and this appeal followed. While this appeal was pending, appellant filed an inverse condemnation action in state court asserting the same claims raised in this federal lawsuit. As of the date of oral argument in this case, pleadings had been filed in the state case, but the lawsuit had not yet gone to trial.

## II.

The district court dismissed the just compensation claim for lack of subject matter jurisdiction. The court held that an inverse condemnation action could not lie against MARTA because that state agency did not have the power of eminent domain, and that the just compensation claim against MARTA was therefore frivolous.

It is by now axiomatic that the federal courts are tribunals of limited jurisdiction. *See, e.g., Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978); *Aldinger v. Howard*, 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976); *Maxwell v. First National Bank*, 638 F.2d 32, 35 (5th Cir. 1981). Both the Constitution and various statutes limit the subject matter of cases that may be heard by the federal courts, and the federal courts should be scrupulous in confining their use of judicial power to the precise limits set by the Constitution and Congress. *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971). Consequently, it is incumbent upon the party seeking to avail himself of federal court jurisdiction to demonstrate the existence of jurisdiction. *See Pettinelli v. Danzig*, 644 F.2d 1160, 1162 (5th Cir. 1981).

In this case, appellant has asserted a claim under 42 U.S.C. § 1983.[7] Specifically, he claims that MARTA, a state agency acting under color of state law, deprived him of the beneficial use of his property for

---

5. The fourteenth amendment provides in relevant part:

    nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S.Const., amend. XIV, § 1.

6. 42 U.S.C. §§ 4601–4655.

7. Appellant predicates jurisdiction over this cause of action upon 42 U.S.C. § 1983, but that statute is only remedial. It creates a cause of action but does not itself bestow jurisdiction upon the district court. *Hagans v. Lavine*, 415 U.S. 528, 535, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974); *Curtis v. Taylor*, 625 F.2d 645, 649 (5th Cir.), *modified*, 648 F.2d 946 (5th Cir. 1980). Consequently, appellant should have cited 28 U.S.C. § 1343(3) as the source of the district court's jurisdiction to hear his § 1983 claims. Section 1343(3) grants to the federal courts jurisdiction to hear claims alleging official state deprivation of constitutional rights or rights secured by federal statutes providing for equal rights. This omission, however, will not defeat jurisdiction when the "facts alleged in the complaint satisfy the jurisdictional requirements of the statute." *Southpark Square Ltd. v. City of Jackson*, 565 F.2d 338, 341 n.2 (5th Cir. 1977), *cert. denied*, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978). *See Schlesinger v. Councilman*, 420 U.S. 738, 744 n.9, 95 S.Ct. 1300, 1306 n.9, 43 L.Ed.2d 591 (1975).

    Appellant also contends that he has a direct cause of action under the just compensation clause and that the court has federal question jurisdiction under 28 U.S.C. § 1331. We pretermit this issue. Although we find it difficult to distinguish between a claim alleging a deprivation of a constitutional right under color of state law and a similar claim arising directly under the Constitution, we base our discussion of the just compensation claim solely upon 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). *See Lake County Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 398–99, 99 S.Ct. 1171, 1175–76, 59 L.Ed.2d 401 (1979).

a public purpose during the construction of the east line and thereafter without providing just compensation. He therefore contends that MARTA deprived him of his constitutional rights while acting under color of state law. We hold that this claim meets the threshold jurisdictional requirements of 28 U.S.C. § 1343(3) because it is well established that "where the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court ... must entertain the suit." *Bell v. Hood,* 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946). *See also Hagans v. Lavine,* 415 U.S. 528, 538–39, 94 S.Ct. 1372, 1379–80, 39 L.Ed.2d 577 (1974); *Silva v. Vowell,* 621 F.2d 640, 645–46 (5th Cir. 1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 941 (1981); *Southpark Square Ltd. v. City of Jackson,* 565 F.2d 338, 341 (5th Cir. 1977), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978).

■ There are two exceptions to the general rule of *Bell v. Hood.* Even if a complaint alleges injury to federal rights, the courts should not entertain the lawsuit "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. at 682–83, 66 S.Ct. at 776; *accord, Wohlfahrt v. Memorial Medical Center,* 658 F.2d 416, 417 (5th Cir. 1981).

MARTA argues that appellant's claim under the just compensation clause is immaterial to the underlying dispute. MARTA contends that this suit is really an inverse condemnation action under state law and that the federal issues raised are merely "lurking in the background." *See Johnston v. Byrd,* 354 F.2d 982, 984 (5th Cir. 1965).

This argument is without merit, for appellant has flatly alleged that an unconstitutional taking of his property has occurred. Whatever rights appellant may have under state law, it is obvious that the federal Constitution protects him from official takings of property for public use without just compensation. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980) (just compensation clause is incorporated into the fourteenth amendment). The constitutional claim in this case is "not merely a background issue but instead constitute[s] not only the gist but the whole foreground of the lawsuit." *Creel v. City of Atlanta,* 399 F.2d 777, 778 (5th Cir. 1968).[8]

We think that it is equally apparent that the just compensation claim is not "insubstantial and frivolous." For jurisdictional purposes, a complaint is wholly insubstantial and frivolous only when "its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973), *quoted in Hagans v. Lavine,* 415 U.S. at 538, 94 S.Ct. at 1379. *See also Curtis v. Taylor,* 625 F.2d 645, 649–50 (5th Cir.), *modified,* 648 F.2d 946 (5th Cir. 1980); *Bussey v. Harris,* 611 F.2d 1001, 1006–07 (5th Cir. 1980). Neither the Supreme Court nor this court has handed down any decision stating that a person whose property is allegedly taken for public use cannot raise objections under the federal Constitution in federal court. Indeed, a host of cases proclaim the contrary. *See, e.g., Lake County Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (attack on land use ordinance cognizable in federal court); *Penn Central Transportation Co. v.*

---

8. MARTA cites two cases which seem to indicate that the district court had no jurisdiction to hear a suit involving local eminent domain questions. *See Screven County v. Brier Creek Hunting & Fishing Club,* 202 F.2d 369, 371 (5th Cir.), *cert. denied,* 345 U.S. 994, 73 S.Ct. 1136, 97 L.Ed. 1402 (1953); *Cogswell v. Board of Levee Comm'rs,* 142 F.2d 750, 751–52 (5th Cir.

1944). Suffice it to say that we believe the proposition of law these cases purportedly contain has no validity in light of subsequent decisions by the Supreme Court and the fifth circuit. *See, e.g., Bell v. Hood,* 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946); *Creel v. City of Atlanta,* 399 F.2d 777, 778 (5th Cir. 1968).

*City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (federal constitutional attack on local zoning ordinance as uncompensated taking heard in federal court); *Chicago, Burlington & Quincy R.R. v. City of Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897) (just compensation clause restricts states from taking private property for public use without just compensation); *Hernandez v. City of Lafayette*, 643 F.2d 1188 (5th Cir. 1981) (federal court entertains damages action under 42 U.S.C. § 1983 and the just compensation clause), *appeal dismissed*, —— U.S. ——, 102 S.Ct. 1242, 71 L.Ed.2d 440 (1982).

The district court nonetheless held that this particular claim was frivolous and insubstantial because it named as defendant an official entity that lacked eminent domain power. Initially, the district court cited no apposite authority from either this circuit or the Supreme Court to substantiate its position.[9] Consequently, we fail to see how it could have concluded that the issue was foreclosed by prior binding authority as is required before an otherwise colorable federal claim may be dismissed on jurisdictional grounds. *See Curtis v. Taylor*, 625 F.2d at 649–50 (jurisdiction of district court properly invoked when constitutional issue raised is not clearly foreclosed, even if issue does not appear to be of serious moment).

■■■■■ More importantly, however, we disagree with the basic premise of the district court that an inverse condemnation action will not lie against MARTA because it does not have the power of eminent domain. A taking occurs whenever a public entity substantially deprives a private party of the beneficial use of his property for a public purpose. *Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall.) 166, 177–78, 20 L.Ed. 557 (1872); *Richmond Elks Hall Association v. Richmond Redevelopment Agency*, 561 F.2d 1327, 1330 (9th Cir. 1977). Normally, an official taking of private property occurs when a governmental body exercises its eminent domain power in a condemnation proceeding. The state can, however, deprive an individual of his property without instituting formal condemnation proceedings to force the transfer of title. In those instances the party deprived of his property may bring an inverse condemnation action to compel payment of just compensation for the property seized or impaired. *See San Diego Gas & Electric Co. v. City of San Diego*, 450 U.S. 621, 651, 101 S.Ct. 1287, 1303, 67 L.Ed.2d 551 (1981) (Brennan, J., dissenting). Definitionally, the concept of an unconstitutional taking does not turn on which public agency deprived a private party of the use of his property, but rather, turns on the fact of deprivation for public use. *Cf. Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Federal Power Commission*, 510 F.2d 198, 207 n.36 (D.C. Cir.1975) ("public use" turns on actual purpose for which property is taken, not on identity of operator). If official authorities act on behalf of the state so as to take private property for public use without just compensation, even if they are acting outside of the scope of their official powers, they have violated the fifth and fourteenth amendments and are subject to an inverse condemnation suit. *Katz v. State of Connecticut*, 307 F.Supp. 480, 482 (D.Conn. 1969), *aff'd*, 433 F.2d 878 (2d Cir. 1970). As long as the state acts through one of its

---

**9.** The district court cited *City of New York v. Pine*, 185 U.S. 93, 22 S.Ct. 592, 46 L.Ed. 820 (1902), as authority for this proposition. We fail to see how that case supports the district court in this regard. *Pine* was a case dealing with the equitable doctrine of laches, and did not purport to create the broad proposition for which, admittedly, it is occasionally cited. In *Pine*, the plaintiff had sought an injunction against the City of New York two years after construction had begun on a water diversion system. Although the city did not have eminent domain powers, the Supreme Court reversed the decision granting an injunction and remanded with instructions to fix the level of damages and grant an injunction only if the city did not pay the award. *Id.* at 104–05, 22 S.Ct. at 596–97. If anything, it would seem that *Pine* implicitly supports the availability of inverse condemnation relief against a public entity with or without eminent domain authority. *Cf. Southern Bell Tel. & Tel. Co. v. Southern Precision Pattern Works, Inc.*, 251 F.2d 537, 541 (5th Cir. 1958) (cites *Pine* only as an estoppel case).

arms in such a way as to deprive an individual of his property for public use, it is irrelevant whether the state arm doing the actual taking has eminent domain power. The party deprived of his property may challenge the constitutionality of the uncompensated deprivation by bringing an inverse condemnation action in federal court.

The district court cited a number of cases to support its theory that an official entity that does not have eminent domain power may not be sued for inverse condemnation. Most of them are clearly distinguishable from this case.[10] Only one case cited by the district court directly supports its decision. In *Jacobson v. Tahoe Regional Planning Agency*, 566 F.2d 1353, 1358 (9th Cir. 1977), *aff'd in part, rev'd in part sub nom Lake County Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the court dismissed an inverse condemnation claim

against the Agency because it lacked eminent domain powers.

We cannot agree with the ninth circuit's decision in *Jacobson* because we believe that application of the rule in that case would undermine the force of the just compensation clause. If a private party were unable to seek redress under the just compensation clause when an official agency acts outside its statutory powers and takes property for public use, the state would be able to escape liability under the just compensation clause by taking property through agencies without statutory powers of eminent domain. We think that the threat of this kind of shell game ought to be avoided, and we are not particularly worried about the niceties of payment for the alleged taking. It is enough for our purposes that MARTA has allegedly deprived appellant of his property for public use without just compensation.[11] *See Le-*

10. The district court cited *O'Grady v. City of Montpelier*, 474 F.Supp. 186, 187 (D.Vt.1979); *Nasralah v. Barcelo*, 465 F.Supp. 1273, 1275 (D.P.R.1979); and *Gregory v. City of New York*, 346 F.Supp. 140, 143 (S.D.N.Y.1972).

In *O'Grady*, the court dismissed an inverse condemnation action against a private contractor whose work for a city caused damage to the plaintiff's land. The defendant relied upon one version of the "government contract defense" which provides that private contractors who execute a government contract according to specifications are generally immune from liability for harm resulting from their work. *See generally Yearsley v. Ross Constr. Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940); Annot., 9 A.L.R.3d 382 (1966); Comment, *Government Contract Defense in Strict Liability Suits for Defective Design*, 48 U.Chi.L.Rev. 1030, 1045–47 (1981). The government contract defense is of no relevance in this case since the agent allegedly responsible for the damage is an arm of the state government itself. In *Nasralah*, the court dismissed an inverse condemnation action for damages against individual government officers because the plaintiff had failed to allege "the absence of good faith with sufficient particularity." 465 F.Supp. at 1276. The issue in *Nasralah*, good faith immunity for government officers, has no relevance here since individual officers of MARTA have not been sued.

*Gregory* was a diversity action brought by Pennsylvania property owners against the City of New York. The plaintiffs sought recovery for the tort of continuing trespass under New York law. In the course of discussing the ap-

plicable statute of limitations, the district court baldly concluded that the plaintiffs could not have brought an action for inverse condemnation against the defendant because the city did not have eminent domain powers with respect to property in Pennsylvania. In support of that proposition, the court cited *City of New York v. Pine*, 185 U.S. 93, 22 S.Ct. 592, 46 L.Ed. 820 (1902). We find the *Gregory* decision unpersuasive for two reasons: first, it was decided under New York state law rather than federal law; and second, its holding is evidently based upon the erroneous conclusion that *Pine* prohibits inverse condemnation suits against official entities that do not possess eminent domain power. As shown previously, *Pine* does not stand for that proposition. *See supra* note 9.

The district court also cited *Golding v. Township of New Britain*, 33 Pa.Commw. 635, 637, 382 A.2d 509, 511 (1978). *Golding* was a case against a public entity without eminent domain power, but was based on a statutory cause of action under state law. We think it inapposite to our discussion of a federal claim under the just compensation clause.

11. The district court also cited a treatise to support its expansive proposition. *See* 2 Nichols on Eminent Domain § 6.21 (3d ed. 1979). The treatise provides direct support for the proposition, but in itself originally failed to cite any case support for that proposition. In a supplement, the author of the treatise subsequently cited two cases that had cited the original unsupported assertion in the treatise. In this respect, the treatise is essentially a self-ful-

*noir v. Porters Creek Watershed District,* 586 F.2d 1081, 1085, 1096 (6th Cir. 1978).[12]

In this case, MARTA is an official agency invested with many official powers. Its conduct is state action. Appellant alleges

filling precedent of somewhat questionable value. Additionally, the treatise failed to distinguish between private parties lacking inverse condemnation power and public entities without that power; it also failed to consider the policy implications of its broad rule. We therefore conclude that the treatise's assertion is of limited utility and even less precedential value.

12. *Lenoir* can be read as direct support for our conclusion that an inverse condemnation action will lie against a public agency even if the agency lacks eminent domain power. In *Lenoir*, the plaintiff brought an action against several water districts for flood damage to his property in Tennessee. The district court granted summary judgment against one defendant, a water district in the State of Mississippi, "for the reason that defendant did not possess eminent domain powers over Lenoir's property, which admittedly lay solely within the boundaries of Tennessee." *Lenoir v. Porters Creek Watershed Dist.,* 586 F.2d 1081, 1085 (6th Cir. 1978). The court of appeals reversed, *id.* at 1093–94, although it did not discuss this point explicitly. We think, however, that the court's holding necessarily implies that the sixth circuit is in accord with our views on the inverse condemnation issue presented in this case.

13. We have determined that the district court has jurisdiction to hear appellant's claim that he was improperly deprived of his property by MARTA in violation of the just compensation clause. We also decide that the district court has subject matter jurisdiction over appellant's due process claim. We recognize that a landowner is not deprived of due process if there exists an adequate procedure to secure compensation. *See Stringer v. United States,* 471 F.2d 381, 383 (5th Cir. 1973). In this case, however, appellant contends that the Georgia procedures have proved inadequate to protect his rights in this matter. We think that this assertion, in light of the protracted and confusing procedural history of this case, *see supra* note 3, suffices to meet the jurisdictional test of *Bell v. Hood,* 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946). If the district court eventually has to hear this case on the merits, we are confident that the seriousness of any claim of lack of adequate state procedures will be apparent.

To the extent, however, that appellant's due process claim is only predicated on the lack of a hearing before the taking, it is frivolous. Binding precedent makes it clear that a party is

that MARTA has taken his property for public use without just compensation. This allegation suffices to provide the federal court with jurisdiction to hear his case, notwithstanding MARTA's lack of statutory authority to condemn private property.[13]

not entitled to a pre-taking hearing if there are available judicial remedies. *See Cherokee Nation v. Southern Kan. Ry.,* 135 U.S. 641, 659, 10 S.Ct. 965, 971, 34 L.Ed. 295 (1890); *Stringer v. United States,* 471 F.2d at 383. Appellant has failed to prosecute his claim under the equal protection clause, so we deem it abandoned.

The district court, of course, had no independent jurisdictional basis for hearing the statutory claim brought under section 1983 and the Uniform Relocation Assistance Act. *See Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Silva v. Vowell,* 621 F.2d 640, 645 (5th Cir. 1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 941, 67 L.Ed.2d 111 (1981). The district court had jurisdiction over this claim, however, pursuant to the general federal question statute, 28 U.S.C. § 1331, for it is evident that the claim involves a substantial dispute over the proper construction of the Act. *See Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936); *Mobil Oil Corp. v. Coastal Petroleum Corp.,* 671 F.2d 419, 422–23 (11th Cir. 1982). Alternatively, the federal court had pendent jurisdiction over the statutory claim because this claim arose out of the same "common nucleus of operative fact" as the alleged unconstitutional taking. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Silva v. Vowell,* 621 F.2d at 695. *See also Rosado v. Wyman,* 397 U.S. 397, 402–05, 90 S.Ct. 1207, 1212–14, 25 L.Ed.2d 442 (1970) (federal court has pendent jurisdiction over federal statutory claim if it already has jurisdiction over a related constitutional claim under 28 U.S.C. § 1343(3)); *Curtis v. Taylor,* 625 F.2d 645, 650 n.8 (5th Cir.), *modified,* 648 F.2d 946 (5th Cir. 1980) (policy favoring pendent jurisdiction is particularly strong when the pendent claim is one involving federal policy).

Having determined that the district court had jurisdiction over the federal statutory claim, we affirm its decision dismissing it for failing to state a claim upon which relief can be granted. The Uniform Relocation Assistance Act explicitly precludes a private right of action under its provisions. 42 U.S.C. § 4602(a); *Roth v. United States Dep't of Transp.,* 572 F.2d 183, 184 (8th Cir. 1978). Appellant's efforts to avoid the plain language of section 4602(a) are simply unpersuasive.

The district court also has jurisdiction to entertain the state claims. As the court's refusal to exercise pendent jurisdiction was based on its dismissal of the federal claims, we vacate

## III.

Having concluded that the district court has jurisdiction to hear this case, we nonetheless believe that the district court should abstain from holding any further proceedings pending the outcome of the parallel action now before the state court. As has been noted many times before, a suit involving state condemnation of private property is primarily a local matter that is best left to the state courts. *See, e.g., Martin v. Creasy*, 360 U.S. 219, 224–25, 79 S.Ct. 1034, 1037–38, 3 L.Ed.2d 1186 (1959); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28, 79 S.Ct. 1070, 1072–73, 3 L.Ed.2d 1058 (1959); *Madisonville Traction Co. v. St. Bernard Mining Co.*, 196 U.S. 239, 257, 25 S.Ct. 251, 258, 49 L.Ed. 462 (1905); *Creel v. City of Atlanta*, 399 F.2d at 779. However, the federal courts should not abstain merely because local condemnation is involved. Only in those instances in which other exceptional circumstances exist should the federal court abstain once its jurisdiction is properly invoked. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959).

This case presents several such unusual circumstances. By filing a parallel inverse condemnation action in state court, appellant has raised the possibility of inconsistent judgments as to the basic issue whether a taking occurred. Additionally, should both suits proceed and plaintiff prevail in each, insuperable difficulties might arise over the proper remedy. Presumably the plaintiff would be entitled to relief in both suits, but each court would have difficulty implementing its decision absent some control over the actions of the other court. Finally, it appears from oral argument that this particular case involves novel questions of state law regarding the nature of a taking when vehicular access to property is only impaired. Resolution of those issues of Georgia law bears upon important public policies of that state which "transcend[ ] the result of the case ... at bar." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (citing *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. at 28, 79 S.Ct. at 1072–73). *See also Cox v. Planning District I Community Mental Health and Mental Retardation Services Board*, 669 F.2d 940, 942 (4th Cir. 1982) (abstention appropriate when parallel state lawsuit implicating issues of extraordinary importance to state policies is pending). In short, we believe that these issues are better resolved in a single proceeding in state court. This court has previously determined that abstention is appropriate in a case factually indistinguishable from this one. *See Creel v. City of Atlanta*,[14] 399 F.2d at 779; *accord, Luedtke v. County of Milwaukee*, 521 F.2d 387, 390 (7th Cir. 1975); *cf. Shamrock Development Co. v. City of Concord*, 656 F.2d 1380, 1384–85 (9th Cir. 1981) (district court's explicit refusal to abstain in similar setting is not abuse of discretion, although abstention would have been warranted). We believe abstention is equally appropriate here.

## IV.

We conclude that the district court erred in dismissing this lawsuit for want of subject matter jurisdiction. Nonetheless, we believe that the district court should abstain from hearing this case on the merits. We therefore vacate the judgment of the district court and remand with instructions to abstain and to retain jurisdiction until it becomes apparent that appellant cannot obtain an adjudication on the merits of his claims in state court.[15]

---

that judgment pending the outcome of the action now in state court.

**14.** We recognize that the parallel state proceeding in *Creel v. City of Atlanta*, 399 F.2d 777 (5th Cir. 1968), was a state initiated condemnation action while the parallel state proceeding in this case is an inverse condemnation action initiated by Fountain. The policies favoring abstention as formulated in *Creel* are equally strong in both cases.

**15.** *See Zwickler v. Koota*, 389 U.S. 241, 244 n.4, 88 S.Ct. 391, 393 n.4, 19 L.Ed.2d 444 (1967) (once a federal constitutional issue has been raised and abstention doctrine invoked, "it is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.

better practice ... to retain jurisdiction, rather than to dismiss"); *accord, American Trial Lawyers Ass'n v. New Jersey Supreme Court*, 409 U.S. 467, 469, 93 S.Ct. 627, 629, 34 L.Ed.2d 651 (1973) (per curiam); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 30–31, 79 S.Ct. 1070, 1073–74, 3 L.Ed.2d 1058 (1959);

*Creel v. City of Atlanta*, 399 F.2d 777, 779 (5th Cir. 1968); *Cox v. Planning Dist. I Community Mental Health & Mental Retardation Serv. Bd.*, 669 F.2d 940, 943 (4th Cir. 1982); *Muskegon Theatres, Inc. v. City of Muskegon*, 507 F.2d 199, 205 (6th Cir. 1974).