

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-1996

# Brown v. Francis

Precedential or Non-Precedential:

Docket 95-7273

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Brown v. Francis" (1996). *1996 Decisions.* Paper 230.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/230

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 95-7273
_____

BARRY BROWN; JOLIE STAHL, AS THEY ARE TRUSTEES OF THE LONG
BAY TRUST

v.

LEO FRANCIS, AS HE IS THE COMMISSIONER OF THE DEPARTMENT
OF PUBLIC WORKS; DELMA G. HODGE, AS SHE IS THE COMMISSIONER
OF THE DEPARTMENT OF PROPERTY AND PROCUREMENT OF THE
GOVERNMENT OF THE VIRGIN ISLANDS; GOVERNMENT OF THE VIRGIN
ISLANDS OF THE UNITED STATES OF AMERICA

(D.C. No. 92-cv-00081)
_____

GOVERNMENT OF THE VIRGIN ISLANDS

v.

0.459 ACRES OF LAND CONSISTING OF FOLLOWING:  PARCEL NO.
6A ESTATE THOMAS KINGS QUARTER AND PARCEL NO. 9A ESTATE
THOMAS, VIRGIN ISLANDS; LONG BAY TRUST

(D.C. No. 93-cv-00059)

LEO FRANCIS, AS HE IS THE COMMISSIONER OF THE DEPARTMENT OF
PUBLIC WORKS; DELMA G. HODGE, AS SHE IS THE COMMISSIONER
OF THE GOVERNMENT OF THE VIRGIN ISLANDS; GOVERNMENT OF
THE VIRGIN ISLANDS OF THE UNITED STATES OF AMERICA
_____

On Appeal from the District Court of the
Virgin Islands
(Division of St. Thomas and St. John)
(D.C. Civil Action Nos. 92-00081 and 93-00059)
_____

Argued December 4, 1995
BEFORE:  GREENBERG and MCKEE, CIRCUIT JUDGES, and
ACKERMAN, DISTRICT JUDGE[1]

_____

[1]Honorable Harold A. Ackerman, Senior Judge of the United States
District Court for the District of New Jersey, sitting by
designation.

(Filed: February 7, 1996)

Robert W. Bornholt
Pamela Tepper (argued)
Department of Justice
48B-50C Kronprindsens Gade
GERS Bldg., 2d Floor
St. Thomas, USVI 00802

Attorneys for Appellants


Morris M. Goldings (argued)
Ellen S. Shapiro
Mahoney, Hawkes & Goldings
The Heritage on the Garden
75 Park Plaza
Boston, Massachusetts 02116

Attorneys for Appellees

_____

OPINION OF THE COURT
_____


HAROLD A. ACKERMAN, Senior District Judge

On this appeal, we are faced with several interrelated jurisdictional issues arising out of appellant Long Bay Trust's inverse condemnation action filed in the District Court of the Virgin Islands and the Government of the Virgin Islands' ("government") parallel eminent domain action filed in the Territorial Court of the Virgin Islands. Both cases involved the same parcels of land.

First, we must determine whether the government's eminent domain case was properly removed from Territorial Court to the district court. Second, we must assess the impact, if any, of the district court's order consolidating the eminent domain and

2

inverse condemnation cases following the removal from the Territorial Court, and the parties' subsequent submission of their claims to binding arbitration.

For the following reasons, we conclude that the district court did not have subject matter jurisdiction over the government's eminent domain case and that the case was therefore improperly removed to the district court. Ultimately, this lack of jurisdiction requires us to vacate the district court's order confirming the arbitration award. The eminent domain and inverse condemnation cases will be remanded to the district court with instructions to remand the eminent domain case to the territorial court. Finally, for the reasons we set forth below, the district court is to consider abstaining from deciding the inverse condemnation case.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Introduction

This appeal involves a dispute that arose out of the Virgin Island Government's plans to condemn a portion of privately-owned commercial property located in the Virgin Islands. Sometime prior to 1988, the government began planning to improve traffic circulation on or about Long Bay Road and Route 313 in the Virgin Islands. The project, which was to be 100% U.S. federally funded, and was known as the "Long Bay Road Highway Improvement Project" required the use of additional land. Accordingly, the Virgin Islands government commenced negotiations for the "taking" of private land that would be needed for the project.

3

Specifically, the government required approximately 2.64 acres of land known as Parcels No. 6 and No. 9, located in Estate Thomas, Kings Quarter, St. Thomas. The property was commercially zoned and several buildings were situated upon the land. During December 1988 or January 1989, the government commenced negotiations with the owners of the property, Millad Associates, for the acquisition of the property.

Before a deal could be ironed out with the government, Millad Associates sold the property to Jolie Stahl and Barry Brown, as co-trustees ("trustees") of the Long Bay Trust. The purchasers paid $3.25 million for both the property and the buildings situated upon the property. A deed to the property was executed by the parties on May 9, 1989, and the deed was recorded on May 31, 1989. At the time of purchase, the trustees were aware of the government's plans to "take" a portion of the property.

### B.    The Litigation

Three years after the trustees purchased the subject property, the trustees filed an inverse condemnation action in the District Court of the Virgin Islands against the government, alleging that the government had unreasonably delayed in taking portions of the trust property. According to the trustees, the government had deprived the trust of the highest and best value of its property by unreasonably delaying in the condemnation of Lots 6 and 9, while at the same time condemning property across the street from the two lots. The trustees contended that this

4

sequence of events allowed a competitor to get a head-start on business, to the detriment of the trust.  Moreover, the trustees alleged that they could not secure financing or tenants while the government's proposed taking was pending.[2]

The government responded to the trustees' federal court action on August 13, 1992, by filing an eminent domain action, pursuant to V.I. Code Ann. tit. 28, § 411 (1957 & Supp. 1994), in the Virgin Islands Territorial Court.  The government alleged in its complaint that the property was worth approximately $1.2 million.  Furthermore, the government submitted a Declaration of Taking and an Order Vesting Title.  The order vesting title was signed by Judge Ive Arlington Swan on September 1, 1992.

On September 14, 1992, the trustees filed a notice of removal seeking to remove the government's territorial court eminent domain action to the District Court of the Virgin Islands.  App. 10-13.  The government thereafter moved to dismiss the removal petition, arguing that removal was improper because the district court did not have subject matter jurisdiction over

---

[2] See App. 215 (Appellees' Inverse Condemnation Complaint (D.V.I.)).  The government filed a motion to dismiss the inverse condemnation suit on May 29, 1992.  The government argued that the action should be dismissed for failure to state a claim because the government's failure to act on the condemnation at issue was not amenable to court scrutiny.  Furthermore, the government alleged that the district court lacked jurisdiction to hear the inverse condemnation case.  See App. 231-57 (containing filings pertinent to the motion to dismiss).  The district court denied the government's motion in its entirety on March 11, 1993. App. 256-57.

the eminent domain claim.[3]  The district court denied the motion to dismiss.

According to the court, diversity of citizenship jurisdiction supported removal of the eminent domain case to federal court.  The court reasoned that complete diversity of citizenship existed between the Government of the Virgin Islands and the trustees.  Furthermore, the court found that the trustees' tenants were merely nominal parties to the action whose citizenship could be disregarded for purposes of establishing diversity jurisdiction.  The district court therefore found that it had subject matter jurisdiction over the government's eminent domain case and the court denied the government's motion to dismiss the removal petition.

The government renewed its jurisdictional argument in a motion for reconsideration.  According to the government, the trustees erroneously relied upon the citizenship of the Territory of the Virgin Islands in invoking the diversity of citizenship jurisdiction of the district court.  The government argued that because the citizenship of the territory could not be relied upon for purposes of establishing diversity jurisdiction, the district

---

[3]The government filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(h).  It appears, however, that the government's motion should have been filed as a motion to remand pursuant to 28 U.S.C. § 1447(c), which states that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  Whether the government labeled its motion as motion to dismiss or as a motion to remand, does not, however, have any impact on the outcome of this case.

6

court did not have diversity jurisdiction over the eminent domain case. The government argued that removal was therefore improper.

The district court denied the motion for reconsideration, without discussion, in an order dated December 6, 1993.

### C.   The Arbitration

Following the trustees' successful removal of the eminent domain case, two actions involving lots 6 and 9 were left pending in the District Court of the Virgin Islands. Eventually, the two actions were consolidated for both discovery purposes and for trial without a jury. See Appellee's Brief, at 7. Thereafter, the government and the trustees entered into a joint stipulation to refer their controversies to binding arbitration. App. 125. The stipulation specified that the parties would abide by the award rendered, and that the district court could enter judgement on the arbitration award. App. 126.

An arbitration hearing was held on October 5 and 6, 1994. Alex Gonzalez, Esq., served as the arbitrator. App. 126. The arbitrator issued his findings on October 24, 1994. App. 128. The trustees of the Long Bay Trust were awarded a total of $2,891,158.00. App. 134.

### D.   Post Arbitration Litigation

The Government of the Virgin Islands filed a motion to dismiss the arbitration award on December 7, 1994. App. 104. The government claimed that its agents had acted without statutory authority when they had signed the arbitration agreement.

7

Furthermore, the government argued that the district court was without statutory jurisdiction under the Federal Arbitration Act ("FAA") to confirm the arbitration award. App. 104-105. The trustees moved to confirm the arbitration award on February 13, 1995.

The district court denied the government's motion to dismiss and granted the trustees' motion to confirm the arbitration award in a memorandum opinion and order dated March 31, 1995. App. 161-167. According to the court, both the government and the trustees signed the arbitration agreement voluntarily. This in itself constituted an enforceable contract under the FAA, the court reasoned, which the court could enforce. Despite the government's obfuscation, the court noted, the proceeding was governed by the FAA, and the trustees could seek entry of judgment on the arbitration award.

Furthermore, the court noted that the joint stipulation stated that the government would abide by and perform any award rendered by the arbitrator. Even if the parties mistakenly referred to irrelevant statutes in the stipulation (which the government contended deprived the district court of jurisdiction), the court found that the parties' intention to arbitrate their dispute was clearly evidenced by the stipulation. The court therefore denied the government's motion to dismiss the arbitration award and granted the trustees' motion to confirm the arbitration award. App. 167.

Finally, the court also took issue with the government's written submissions in support of its motion to dismiss.

8

According to the court, the government's brief did not contain one citation to precedent. Furthermore, the court noted that "[c]onsidered as a whole, the Government's motion papers are inexcusably opaque and insufficiently supported by case law." App. 167. Accordingly, the court determined that the government would be sanctioned. The court ordered the Government to pay all costs and attorneys' fees associated with the motion. The Government was, however, given an opportunity to show cause why it had not violated Rule 11 of the Federal Rules of Civil Procedure by filing the motion. The Trustees were directed to file an affidavit of costs and attorney fees. App. 163-67. At the present time, the district court has not rendered its decision on the sanctions issue.

## II. DISCUSSION

The government filed a timely notice of appeal from the district court's final order and judgment confirming the arbitrator's award. This order was final within the meaning of 28 U.S.C. § 1291 and we may therefore exercise jurisdiction over the government's appeal from that order.[4]

---

[4]The district court also ordered the government to show cause by April 14, 1995, why it should not be sanctioned for its written submissions on the motion to dismiss the arbitration award. The government argues on appeal that the district court abused its discretion in imposing sanctions. At the same time, however, the government concedes that the district court has not yet issued a final order quantifying or even definitively imposing sanctions.

A court of appeals clearly does not have jurisdiction to review an order which has not yet been issued. The court is therefore without jurisdiction to review the sanctions which may be imposed upon the government. We hasten to add, however, that our lack of jurisdiction over the sanctions issue does not

9

Proper appellate jurisdiction does not, however, relieve us from inquiring into the propriety of the district court's exercise of jurisdiction in this case.  <u>Employers Ins. of Wausau v. Crown Cork & Seal Co.</u>, 905 F.2d 42, 45 (3d Cir. 1990) (citing <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed.2d 501 (1986)).  We exercise plenary review in determining whether the district court was vested with subject matter jurisdiction.  <u>Bumberger v. Insurance Co. of North America</u>, 952 F.2d 764, 766 (3d Cir. 1991).

**A.    The Eminent Domain Case Was Improvidently Removed From Territorial Court**

The Federal Rules of Civil Procedure permit a defendant in a state court action to remove that action to a federal forum.  <u>See</u> 28 U.S.C. § 1441, applicable in the Virgin Islands under 48 U.S. C. § 1613.  As § 1441(a)'s language indicates, removal under that section is proper only if the federal district court would have had original jurisdiction if the case was filed in federal court.  This jurisdictional prerequisite to removal is an absolute, non-waivable requirement.  <u>See</u> <u>Allbritton Communications Co. v. NLRB</u>, 766 F.2d 812, 820 (3d Cir. 1985), <u>cert.</u> <u>denied</u>, 474 U.S. 1081, 106 S. Ct. 850, 88 L. Ed.2d 891

---

deprive us of jurisdiction over the larger, substantive issues out of which the sanctions issue arose.  <u>See</u> <u>McDonnell v. United States</u>, 4 F.3d 1227 (3d Cir. 1993) (finding that unresolved attorney fee issues in case does not deprive court of appeals from exercising jurisdiction over appeal from underlying controversy) (citing <u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S. 196, 198-202, 108 S. Ct. 1717, 1719-22, 100 L.Ed.2d 178 (1988) (other citations omitted)); <u>see</u> <u>also</u> <u>Confer v. Custom Eng'g Co.</u>, 952 F.2d 41, 44 (3d Cir. 1991).

(1986). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985) (citations omitted). If there is any doubt as to the propriety of removal, that case should not be removed to federal court. See Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085, 111 S. Ct. 959, 112 L. Ed.2d 1046 (1991); Abels, 770 F.2d at 29.

Diversity of citizenship subject matter jurisdiction falls within the original jurisdiction of the district court and a state court case that implicates diversity jurisdiction may therefore be removed to federal court. Abels, 770 F.2d at 29. Diversity jurisdiction is properly invoked in cases where there is complete diversity of citizenship between plaintiffs and defendants and where the amount in controversy exceeds $50,000. 28 U.S.C. § 1332. See Development Fin. Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156, 158 (3d Cir. 1995) ("It is axiomatic that the federal judiciary's diversity jurisdiction depends on complete diversity between all plaintiffs and all defendants.") (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)). For purposes of determining whether the complete diversity requirement has been met, the citizenship of nominal parties to the litigation may be disregarded. Abels, 770 F.2d at 29.

11

The district court ruled that the Virgin Islands Government could be considered a citizen for purposes of establishing diversity of citizenship jurisdiction. We disagree with the district court's conclusion. More than one hundred years ago, the United States Supreme Court ruled that a state cannot be considered a citizen for purposes of establishing diversity of citizenship jurisdiction in federal court. Postal Telegraph Cable Co. v. State of Alabama, 155 U.S. 482, 487, 15 S. Ct. 192, 194 (1894). See Ramada Inns, Inc. v. Rosemount Memorial Park Assoc., 598 F.2d 1303, 1306 (3d Cir. 1979) ("[I]t is well settled that a state is not a citizen within the meaning of the diversity statute.") (citations omitted); see also Gable v. Commonwealth of Pennsylvania, 521 F. Supp. 43, 43-44 (E.D. Pa. 1981) ("The rule that a state is not a `citizen' for diversity purposes is a long-standing one; it enjoys a history of acceptance, which remains undiluted by the passage of time.") (citations omitted).

In this case, the district court relied upon the citizenship of the Territory of the Virgin Islands in finding that diversity of citizenship jurisdiction supported removal of the trustees' eminent domain case to federal court. Thus, the question is whether the Government of the Virgin Islands constitutes a "state" for purposes of establishing diversity of citizenship jurisdiction. The trustees argue that the Virgin Islands is not a State, but a Territory of the United States and that the policies which preclude sovereign immunity for territories in federal court similarly preclude a Territory from being

12

considered a "state" for purposes of establishing diversity jurisdiction.  We are not persuaded by these arguments.

Section 1332 of Title 28 of the United States Code specifies, in pertinent part, that "district courts shall have original jurisdiction of all civil actions" between "citizens of different States."  28 U.S.C. § 1332(a).  According to § 1332(d), the "word `States,' as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico."  Accordingly, the Territory of the Virgin Islands, a United States Territory, qualifies as a "state" for purposes of the diversity jurisdiction statute.

As noted above, a state cannot be considered a citizen for purposes of establishing diversity of citizenship jurisdiction subject matter jurisdiction in federal court.  Therefore, it follows that a Territory of the United States, which is considered a state pursuant to § 1332(d), also cannot be considered a citizen for purposes of establishing diversity of citizenship jurisdiction.  The Territory of the Virgin Islands should not have been considered a citizen for purposes of establishing diversity jurisdiction in the court below.  Cf. Mann v. District of Columbia, 742 F.2d 750, 752 (3d Cir. 1984) (concluding that District of Columbia did not qualify as a citizen for purposes of diversity of citizenship jurisdiction because § 1332(d) specified that the District of Columbia (like the territory of the Virgin Islands) was to be construed as a "state" for purposes of the diversity statute).

13

Therefore, the district court did not have subject matter jurisdiction over the eminent domain case and the case was improvidently removed from the Territorial Court.[5]

###   B.   The District Court's Post-Removal Actions

We have concluded that the government's eminent domain case was improvidently removed to federal court.  In the ordinary case, this conclusion would lead us to remand the action to the district court with instructions to remand the case to the state court.  See Abels, 770 F.2d at 27.  This case does not, however, fit within the mold of a garden variety improvidently removed case.

The district court engaged in actions subsequent to the removal of the government's case which served to integrate the jurisdictionally improper eminent domain case with the trustees' jurisdictionally proper inverse condemnation case.  Following removal of the eminent domain case, the eminent domain and inverse condemnation cases were consolidated for discovery purposes and for trial without a jury.  Thereafter, the parties entered into a stipulation to submit all of their claims to an arbitrator.  Finally, the parties' claims were reduced to one award from the arbitrator and the court entered an order and judgment confirming that award.

---

[5]In view of this conclusion, there is no need for us to address the question of whether the trustees' tenants were nominal parties in the eminent domain proceeding.

14

We must determine whether the district court's merger of the inverse condemnation case with the substantively similar, but jurisdictionally deficient eminent domain case precluded the district court from exercising its jurisdiction over the inverse condemnation case. For the reasons set forth below, we have determined that the district court could not properly exercise its jurisdiction over the inverse condemnation case.

It is clear in this case that due to the similarity of the issues in the two cases, the district court's post-consolidation exercise of jurisdiction over the jurisdictionally proper inverse condemnation case also constituted an exercise of authority over the government's jurisdictionally improper eminent domain case. A court may not, however exercise authority over a case for which it does not have subject matter jurisdiction. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed.2d 501 (1986)). Neither consolidation with a jurisdictionally proper case nor an agreement by the parties can cure a case's jurisdictional infirmities. See McKenzie v. United States, 678 F.2d 571, 574 (5th Cir. 1982) (consolidation of jurisdictionally deficient claim with jurisdictionally proper claim does not cure jurisdictional defects) (citations omitted); Reich v. Local 30, IBT, 6 F.3d 978, 982 n.5 (3d Cir. 1993) (parties to action cannot waive subject matter jurisdiction requirements by consenting to court's jurisdiction) (citations omitted). Nonetheless, the district court's consolidation of the cases and the parties' subsequent arbitration agreement had the practical effect of permitting the district court to exercise

15

authority over a case for which it did not have subject matter jurisdiction. We are unwilling to approve of this result.

The district court could not exercise jurisdiction without exercising jurisdiction over the improperly removed eminent domain case. The actions by the court and the parties to this action allowed the jurisdictional infirmity of the eminent domain case to taint the court's attempts to exercise its subject matter jurisdiction over the inverse condemnation case. It follows that we must vacate any orders entered by the district court that were entered after the eminent domain case was removed to the district court and in which the district court purported to exercise jurisdiction over both the eminent domain and inverse condemnation case.

## C. Restoring the Parties to their Pre Removal Postures; Abstention

We have determined that the district court erroneously denied the government's motion to dismiss the trustees' removal petition. Furthermore, we have determined that the district court acted without jurisdiction when it purported to exercise authority over the consolidated inverse condemnation and eminent domain cases. Because any post-removal actions taken by the court in this case were therefore ineffectual, we have determined that restoring the parties to the positions that they occupied prior to the removal is the proper course of action for us to take on this appeal.

16

Consequently, we will vacate the district court's order confirming the arbitration award as the district court did not have jurisdiction to enforce the award in this case. See Southland Corp. v. Keating, 465 U.S. 1, 15 n.9, 104 S.Ct. 852, 861 n.9 (1984). Furthermore, we will remand the eminent domain and inverse condemnation actions to the district court. The district court shall separate the two actions by remanding the government's condemnation action to the Territorial Court of the Virgin Islands and by retaining jurisdiction over the trustees' inverse condemnation action.

This disposition of the appeal will restore the parties to the positions that they occupied prior to the district court's improvident removal and improper exercise of jurisdiction. Two actions involving the same parcels of land will therefore be left pending in federal court and territorial court. Despite our resolution of the jurisdictional issues arising from the district court's improper removal, we are nonetheless concerned about the possibility of the district court's exercise of jurisdiction in this case even though the Territorial Court will also be exercising its jurisdiction over similar issues.

On similar facts, the United States Court of Appeals for the Eleventh Circuit ordered the district court to exercise its power of abstention. T.J. Fountain v. Metropolitan Atlanta Rapid Transit Auth., 678 F.2d 1038, 1046 (11th Cir. 1982). The court ruled that the district court should abstain from deciding an inverse condemnation case until such time that it became apparent that the inverse condemnation plaintiff would not receive the

17

relief it sought in the State of Georgia's previously-filed condemnation action. According to the court, "[a]s has been noted many times before, a suit involving state condemnation of private property is primarily a local matter that is best left to the state courts." Id. The court further reasoned that although abstention was not required in all condemnation cases, abstention was necessary in T.J. Fountain because there was the possibility of inconsistent state and federal judgments. We agree with the T.J. Fountain court's analysis.

Like the T.J. Fountain court, we too are concerned about the problems that may arise from inconsistent judgments in this case. Unlike the T.J. Fountain court, however, we believe that the abstention decision is one that should be exercised by the district court in the first instance. Therefore, instead of ordering the district court to abstain in this matter, we will suggest to the district court to consider abstaining in light of the parallel Territorial Court action. As previously noted, the Territorial Court had actually entered an order vesting title in the government prior to the district court's improper removal. In remanding the case, we leave this fact for the district court's consideration in its abstention analysis.

## III. CONCLUSION

The district court's order and judgment confirming the arbitration award will be vacated. The trustees' inverse condemnation action and the government's eminent domain action

18

will be remanded to the District Court of the Virgin Islands with instructions for the district court to remand the government's eminent domain case to the Territorial Court for the Virgin Islands. Finally, in accord with our discussion on T.J. Fountain, the district court shall consider whether it should abstain from deciding the trustees' inverse condemnation case.

We must stress the narrowness of our ruling. We have determined that the district court acted without subject matter jurisdiction and was therefore without power to enter the post-removal order specified above. It does not necessarily follow from this conclusion, however, that the parties' post-removal agreement to arbitrate is similarly void and without legal effect. Thus, our opinion does not preclude further litigation on the point. Indeed, it is possible that if the arbitration award can be enforced in a jurisdictionally correct proceeding, this entire controversy may be put to rest without the need for extensive proceedings on the remand. Nonetheless, we do not express an opinion on whether the parties' agreement to arbitrate

can survive our conclusion that the district court was without power to enter decisions on that agreement.

———————————————