**CHARLES J. ARNDT, INC., a corporation, Plaintiff-Appellant,**

v.

**CITY OF BIRMINGHAM, a municipal corporation, et al., Defendants-Appellees.**

No. 83–7605.

United States Court of Appeals, Eleventh Circuit.

Dec. 17, 1984.

Engel, Hairston, Moses & Johanson, Griffin Sikes, Jr., Charles R. Johanson, III, Birmingham, Ala., for plaintiff-appellant.

Alton B. Parker, Jr., Spain, Gillon, Riley, Tate & Etheredge, J. Stuart Wallace, Birmingham, Ala., for defendants-appellees City of Birmingham, et al.

Carolyn Nelson, Metropolitan Properties, Inc., Birmingham, Ala., for Metropolitan Properties, Inc. and GB Corp.

Thomas Reuben Bell, Sylacauga, Ala., for Metropolitan Properties, Inc.

Before HILL and HENDERSON, Circuit Judges, and WISDOM *, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

The appellant, Charles J. Arndt, Inc. ("Arndt"), appeals from the orders of the United States District Court for the Northern District of Alabama dismissing Arndt's federal and state law causes of action and denying its motions to alter or amend the court's judgment and to amend the complaint. Arndt alleged that the actions of the defendants constituted a taking of its property without due process of law in violation of the fifth and fourteenth amendments to the Constitution of the United

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

States and 42 U.S.C. § 1983, and deprived it of substantive due process. Finding there was no taking of Arndt's property in a constitutional sense, we affirm the district court.

On September 8, 1981, the Birmingham, Alabama City Council adopted Resolution No. 1119–81 in furtherance of a previously adopted urban renewal plan for downtown Birmingham. Resolution No. 1119–81 declared Block 60 a blighted area and set out specific findings to support this declaration. The resolution provided that the City of Birmingham ("City") should acquire or cause to be acquired all of the property in Block 60 at a reasonable and fair market price for the subsequent redevelopment of the area. The resolution authorized the City to contract with a developer to acquire the property on behalf of the City. Parcels which the developer was unable to obtain by purchase were to be acquired by the City through the exercise of its power of eminent domain.

Pursuant to the resolution's terms, the City entered into an agreement with Metropolitan Properties, Inc. ("Metropolitan") on September 30, 1981, in which Metropolitan agreed to use its best efforts to purchase all of the property interests located in Block 60. Metropolitan thereupon began negotiations with Arndt, the owner of a leasehold interest in real property located in Block 60 on which Arndt operated a men's retail clothing and tailor shop. The City stepped in to conduct the final phases of the negotiations after Arndt complained of an impasse in the talks with Metropolitan. On October 20, 1982, Arndt granted the City or its assigns an option to terminate the Arndt leasehold interest in the Block 60 property. On the same date, the City assigned the option to Metropolitan. The option was exercised on December 30, 1982, the term of the option having been extended by mutual agreement of the parties.

Arndt filed this complaint against the City, the mayor, various city officials in-cluding city council members, Metropolitan, and GB Corporation[1] in the United States District Court for the Northern District of Alabama on April 29, 1983. The complaint charged that the actions of the various defendants in declaring Block 60 a blighted area, in failing to negotiate in good faith or to commence condemnation proceedings, and in coercing Arndt into granting the City the option to terminate its leasehold constituted a taking of Arndt's property without due process in violation of the fifth and fourteenth amendments and 42 U.S.C. § 1983. The complaint also alleged a state law breach of contract cause of action arising out of the failure of the City, Metropolitan or GB Corporation to pay the contract price after exercising the option.

Both the City and corporate defendants filed motions, denominated as "Motion to Dismiss," with the district court on May 23, 1983 and June 20, 1983. The motions were premised, *inter alia*, on the plaintiff's failure to state a claim upon which relief could be granted. On June 28, 1983, the district court directed that the motion filed by the City defendants be treated as a motion for summary judgment.

The district court entered its order dismissing the plaintiff's claims on September 1, 1983. The court found that Arndt's claim that the City Council's declaration of blight constituted a taking was foreclosed by the United States Supreme Court's decision in *Danforth v. United States,* 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939). Arndt's assertion that the defendants failed to negotiate in good faith or to commence timely condemnation proceedings was seen as inconsistent with the claim that it was coerced into granting the option to terminate the lease. In the court's view, Arndt's admission that it entered into an option agreement with the City confirmed that the property was not taken without due process of law. Finally, the court declined to exercise pendent jurisdiction over the state breach of contract claim.[2] At the

---

1. The City, the mayor, and other city officials will be collectively referred to as the City de-fendants. Metropolitan and GB Corporation will be referred to as the corporate defendants.

2. The district court noted in a footnote that the

time of the district court's order, Arndt continued to operate its business at the Block 60 location.

Arndt subsequently filed a motion to alter or amend the court's judgment pursuant to Rule 59 of the Federal Rules of Civil Procedure and a motion for leave to amend its complaint. The amended complaint essentially restated the allegations contained in the first complaint and stressed Arndt's claim of a denial of substantive due process. In an order entered October 17, 1983, the district court denied both motions. In its memorandum of opinion accompanying the order, the court rejected Arndt's arguments of denial of substantive due process and offensive collateral estoppel. Arndt appeals both the orders of September 1, 1983 and October 17, 1983.

## I.

In the briefs submitted to this court, the parties have engaged in a spirited battle over the district court's procedural disposition of the case in its September 1, 1983 order. Arndt insists that the district court treated the defendants' motions as motions to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). It relies on language in the district court's orders referring to the defendants' "motions to dismiss" for support. Counsel for the City defendants contends, however, that its motion was converted into a motion for summary judgment, while counsel for the corporate defendants maintains that the district court did not dispose of its motion under Fed.R. Civ.P. 56. Therefore, our first task is to determine the nature of the district court's treatment of the motions styled "Motion to Dismiss."

In its order of June 28, 1983, the district court ordered that the motion to dismiss filed by the City defendants be considered as a motion for summary judgment. The

court then prescribed a briefing schedule, stating that Arndt was to respond "to the city's motion and to the motion to dismiss filed by defendants Metropolitan Properties, Inc. and GB Corp." It thus appears that the district court initially intended to treat only the motion to dismiss filed by the City defendants as a motion for summary judgment under Fed.R.Civ.P. 56.

The district court entered its order granting the motions to dismiss on September 1, 1983. In its memorandum opinion, the court stated that:

This cause is now before the court on the defendants' motions to dismiss, which have been treated as motions for summary judgment for purposes of briefing and oral arguments. Upon consideration of the pleadings, briefs, affidavits, and other supporting materials submitted by plaintiff and defendants, and based on material facts not in dispute, the court concludes that the defendants' motions to dismiss are due to be granted ....

Record, Volume 1, at 110–11. The district court's referral to the "defendants' motions to dismiss" does not reveal whether the court meant to treat the motions to dismiss filed by both the City and corporate defendants as motions for summary judgment or was simply addressing the City defendants' motion. It is evident, however, that the district court did adjudicate the City defendants' motion on summary judgment.[3]

The Fifth Circuit Court of Appeals phrased it best in *Tuley v. Heyd,* 482 F.2d 590 (5th Cir.1973)[4] when it stated that:

It is a familiar principle that the label a district court puts on its disposition of a case is not binding on a court of appeals. When a district court grants a motion styled a motion to dismiss, but bases its ruling on facts developed outside the pleadings, the appellate court will review

city council defendants relied on an absolute immunity defense. Although the district court indicated that it tended to agree, it did not rely on the immunity defense in reaching its decision. The argument has not been raised before this court. Consequently, we do not address it.

**3.** It is not clear in what manner the district court disposed of the corporate defendants' mo-

tion. We need not specifically address this question, however, for if the claims against the City defendants lack merit, the action against the corporate defendants also fails.

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

the 'dismissal' as a summary judgment under the standards laid down in Fed.R. Civ.P. 56.

*Id.* at 593 (citations omitted). *Accord Save Our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc.*, 568 F.2d 1074, 1077 (5th Cir.), *cert. denied*, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 133 (1978); *Village Harbor, Inc. v. United States*, 559 F.2d 247, 249 (5th Cir.1977). This ruling is premised on Fed.R.Civ.P. 12(b) which states that if matters outside the pleadings are presented to and not excluded by the court, a Fed.R.Civ.P. 12(b)(6) motion shall be considered as a motion for summary judgment.[5] Though the district court did speak in terms of "motions to dismiss," the order of September 1, 1983 makes it clear that the judge considered not only the pleadings, but the parties' briefs and other supporting materials. Accordingly, we will review the district court's judgment in conformance with the standards developed for the review of grants of summary judgment motions.[6]

## II.

■ The just compensation clause of the fifth amendment states that private property shall not be taken for public use without just compensation. The clause is made applicable to the states through the due process clause of the fourteenth amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358, 364 (1980). While the question of what constitutes a taking is, in the language of the Supreme Court, a "problem of considerable difficulty," the Court has recognized several distinct categories of governmental action which may constitute a taking of private property. The typical taking occurs when a government entity exercises its power of eminent domain to obtain title to the property

through formal condemnation proceedings. *See, e.g., Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954) (redevelopment plan authorized redevelopment agency to obtain title to property by eminent domain). A permanent physical occupation of the property, absent a formal condemnation proceeding, may also effect a taking. *See, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (installation of cable television equipment on private property pursuant to authorization contained in state law). In addition, governmental action short of the acquisition of title or permanent physical occupation can constitute a taking where its effects deprive the owner of all or most of his use or interest in the property. *United States v. General Motors Corp.*, 323 U.S. 373, 378, 65 S.Ct. 357, 359–60, 89 L.Ed. 311, 318 (1945). For example, the Court has construed physical invasions of or physical interference with property as a taking. *See, e.g., Kaiser Aetna v. United States*, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (attempt to create public right of access to marina joined to navigable bay as result of private development of inland lagoon); *United States v. Dickinson*, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947) (property permanently flooded by government dam project); *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (frequent low altitude flights of military planes over property). Finally, police power regulations restricting the use of property may also constitute a taking. *See, e.g., Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (state regulation prohibiting mining of coal). *See generally San Diego Gas & Electric Co. v. San Diego*, 450 U.S. 621, 651–53, 101 S.Ct. 1287, 1304–05, 67 L.Ed.2d 551, 572–73

---

5. Federal Rule of Civil Procedure 12(b) states: If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reason-

able opportunity to present all material made pertinent to such a motion by Rule 56.

6. In ruling on the grant of a summary judgment motion, the appellate court must look at the record in the light most favorable to the party opposing the motion and take the allegations as true. *Murray v. Gelderman*, 566 F.2d 1307, 1309 (5th Cir.1978).

(1981) (Brennan, Stewart, Marshall, Powell, JJ., dissenting) (discussion of what governmental actions may amount to a taking).

Not every governmental action interfering with a property interest is a taking entitling the owner to compensation. A case in point is the initial legislative determination that property should be taken for public use. In *Danforth v. United States,* 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939), the Supreme Court stated that:

> A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense.
>
> . . . . .
>
> ... The mere enactment of legislation which authorizes condemnation of property cannot be a taking. Such legislation may be repealed or modified, or appropriations may fail.

*Id.* at 285, 286, 60 S.Ct. at 236, 237, 84 L.Ed. at 246, 247.

In the present case, assuming Arndt's allegations to be true, it is clear that the defendants' actions do not fall within the ambit of the recognized categories of taking. First, the record shows that, as of the time of the suit, Arndt's property had never been the subject of formal condemnation proceedings. Second, Arndt cannot allege the necessary interference with his interest in and use of the Block 60 property. There is nothing in the record to indicate either a permanent physical occupation or physical invasion of the property or to support a showing of interference with the use of the property either through direct physical means or express restriction. Arndt urges nonetheless that the district court erred in rejecting its claim that the City's actions amounted to a taking of its property, premising its argument on two contentions. First, Arndt says that contemporary legal theory has moved away from the Supreme Court's holding in *Dan-*

*forth v. United States.* Second, even if *Danforth* is still good law, Arndt argues that it is inapposite because it did not involve allegations of lack of lawful condemnation authority and abuse of condemnation powers. We disagree on both counts.

Arndt rests its argument that *Danforth* is no longer good law on an analysis of case law which it maintains has cut away at the validity of *Danforth.* The Supreme Court, however, has never overruled its decision in *Danforth.* Furthermore, the cases cited by Arndt are inapplicable. These cases primarily involve challenges to state regulatory activity. The fundamental error in this analysis is the assumption that Resolution No. 1119–81 is a regulatory ordinance. The resolution, however, does not attempt to restrict or regulate Arndt's use of its Block 60 property. Rather, the resolution simply makes a legislative determination[7] that Block 60 of downtown Birmingham is a blighted area subject to condemnation. Even assuming that Resolution No. 1119–81 was a regulatory ordinance, Arndt has made no showing that enactment of the resolution deprived it of the beneficial use of its property. Indeed, the record discloses that at the time of the district court's September 1, 1983 order, almost two years after the adoption of Resolution No. 1119–81, Arndt continued to operate a business at the Block 60 location. The Supreme Court made clear in *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), that an otherwise valid exercise of the police power is not an unconstitutional taking simply because the regulation deprives the owner of the most beneficial use of his property. *Id.* at 592, 82 S.Ct. at 989, 8 L.Ed.2d at 133. *See also Nasser v. City of Homewood,* 671 F.2d 432, 438 (11th Cir.1982) (neither deprivation of most beneficial use of land nor severe decrease in property value is a taking of property).

Arndt's attempt to use this court's decision in *Fountain v. Metropolitan Atlanta*

---

7. In *Tutwiler Drug Company v. City of Birmingham,* 418 So.2d 102 (Ala.1982), the Alabama Supreme Court held that the city council and the mayor acted in a legislative capacity in passing Resolution No. 1119–81. *Id.* at 106.

*Rapid Transit Authority,* 678 F.2d 1038 (11th Cir.1982), as authority for the proposition that *Danforth* is no longer viable also misses the point. In *Fountain,* the plaintiff-appellant brought an inverse condemnation action against the Metropolitan Atlanta Rapid Transit Authority ("MARTA") alleging that MARTA's actions in closing off streets providing vehicular access to the plaintiff's service station during construction of a subway system line constituted a taking of property for public use without just compensation. This court concluded that the district court erred in dismissing the suit for lack of subject matter jurisdiction. In the course of the opinion, the court stated that "[a] taking occurs whenever a public entity substantially deprives a private party of the beneficial use of his property for a public purpose." *Id.* at 1043. Nowhere in that opinion is there any intimation of *Danforth's* diminished validity.

Likewise, Arndt's citation of *Richmond Elks Hall Association v. Richmond Redevelopment Agency,* 561 F.2d 1327 (9th Cir. 1977) and *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784 (8th Cir.), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979), does not convince us that the principle of *Danforth* has been eroded. In *Richmond,* the plaintiff's property was within an area declared blighted in September 1959. The redevelopment plan was afforded wide publicity, a schedule for acquiring property within the project area was established, and the redevelopment agency began acquisition and demolition in the area. The plaintiff suffered a loss in rental income from the property and street improvement within the area flooded the plaintiff's basement. In 1972, the agency informed the plaintiff that it would not acquire the property. The district court held that a compensable taking occurred in 1968, nine years after the declaration of blight, because the agency's actions had severely limited the property's use for its intended purposes. The Ninth Circuit Court of Appeals affirmed.

In *Garland,* the city's Board of Aldermen passed an ordinance in June, 1971, declaring a portion of the municipality which included the plaintiff's leased premises to be a blighted area. Agents for the developer chosen by the city ordered the plaintiff to vacate its premises in March 1973. According to the plaintiff's complaint, condemnation proceedings were initiated in April 1973. Between 1973 and 1975, the developer's agents acquired the fee interest in plaintiff's leased property. Demolition of surrounding buildings caused structural damage to the plaintiff's building and debris from the demolition blocked the entrance to its loading dock, clogged the air conditioning system, and covered its merchandise with dust. The Eighth Circuit Court of Appeals reversed the district court's dismissal of the plaintiff's complaint for failure to state a claim for relief. In doing so, the court cited *Danforth* for the proposition that the "mere declaration of blight and other initial steps authorizing condemnation, even if they result in a decline in property values, do not constitute a taking requiring compensation to the property owner." *Garland,* 596 F.2d at 787.

Unlike the plaintiffs in *Richmond* and *Garland,* the record does not reflect that Arndt's property was ever the subject of condemnation proceedings or suffered any physical damage. The cases are therefore distinguishable from the facts of this case. Furthermore, neither case supports Arndt's claim that *Danforth* is no longer good law. For these reasons we cannot agree that the district court erroneously relied on *Danforth* in determining that the City of Birmingham's resolution declaring Block 60 a blighted area did not constitute a taking of property without due process in violation of the fifth and fourteenth amendments.

We must likewise reject Arndt's argument that, assuming the principle of *Danforth* is still alive and well, it is inapplicable to this case because it did not include allegations of lack of lawful condemnation authority and abuse of condemnation powers. Arndt points out that its complaint is not premised solely on the allegation that enactment of Resolution No. 1119–81 effected a taking of Arndt's property. Rather, it contends that the alleged lack of lawful authority in the City to enact the resolution

and the purported abuse of the police and condemnation powers by the defendants in reality constituted a taking. The bases for this assertion are Arndt's allegations that the City did not have the requisite statutory authority to condemn Block 60 as a blighted area and that the defendants intentionally manipulated the evidence to support the finding of blight.

Arndt cites to two decisions that it claims sanction its conclusion, *Espanola Way Corp. v. Meyerson*, 690 F.2d 827 (11th Cir. 1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983), and *Suthoff v. Yazoo County Industrial Development Corp.*, 637 F.2d 337 (5th Cir. Unit A 1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 316 (1982). Neither case sustains the merits of Arndt's argument. In *Espanola*, the plaintiff alleged that Miami Beach City Commissioners, concerned by a criminal element among the great influx of Cuban refugees, decided to attack the problem by closing down hotels that housed the refugees. To this end, the plaintiff contended that the commissioners assembled a task force of building code and fire inspectors to conduct frequent inspections of the hotels and to write citations for violations of the city codes until the hotels were driven out of business. A panel of this court reversed the district court's order dismissing the complaint for failure to state a claim. The court stated that the complaint did contain sufficient factual allegations to state a claim for taking of property without due process of law. We intimated nothing, however, as to the merits of the plaintiff's claim.

Similarly, in *Suthoff*, the plaintiffs claimed that the City of Yazoo was induced to institute condemnation proceedings to expropriate plaintiffs' property for sewerage purposes with the intent of coercing the plaintiffs into selling their property at a reduced price to Yazoo County. The plaintiffs alleged that the City never intended to acquire the property for sewerage purposes and subsequently dismissed the expropriation proceedings once plaintiffs sold the property. The Fifth Circuit Court of Appeals reversed the district court's dismissal of the plaintiffs' complaint for lack of subject matter jurisdiction, stating that "[n]or can we say the federal claim is so frivolous that the district court may not entertain jurisdiction of it, *if only to dismiss it on its merits.*" *Suthoff*, 637 F.2d at 339 (emphasis added).

In this case, the district court took jurisdiction of Arndt's federal claims, but disposed of them on the merits. Assuming Arndt's allegations to be true, we cannot say that the district court was in error. Arndt's property has never been the subject of condemnation proceedings. It is also clear from the record and from Arndt's own complaint that the property in question was in Arndt's possession at all times relevant to this appeal. Arndt, assisted by an attorney, negotiated with the City and Metropolitan for the option to terminate Arndt's leasehold interest in the Block 60 property. The agreement stipulated a total price of $206,000.00 to be paid upon the exercise of the option. Arndt does not contend that this was not a fair market price. Based on these facts, there was no error in finding that Arndt's property was not taken for public purposes.

### III.

Arndt's contention that the defendants' actions constituted a denial of substantive due process is also necessarily precluded by these same facts. "In order to make out a claim of deprivation of Fourteenth Amendment due process rights a plaintiff must demonstrate first, that he has been deprived of liberty or property in the constitutional sense ...." *Drummond v. Fulton County Department of Family & Children's Services*, 563 F.2d 1200, 1206 (5th Cir.1977) (citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978). *Accord Hunter v. Florida Parole & Probation Commission*, 674 F.2d 847, 848 (11th Cir.1982); *McElwee v. Todd*, 581 F.2d 1182, 1183 (5th Cir.1978). Arndt has not demonstrated that the defendants' actions deprived him of a constitutionally protected property interest. As noted earlier,

Arndt's leasehold interest was never subjected to a condemnation suit or to any regulation restricting its use. The property was, by Arndt's own admission, still in use as a clothing store as late as September 19, 1983, the date of the filing of the amended complaint. Arndt negotiated an arm's length agreement to grant the City or its assigns an option to terminate its interest in the property for the price of $206,000.00. Since Arndt has not been deprived of its property interest, it cannot claim that it has been denied the substantive protections of the fourteenth amendment due process clause.[8]

### IV.

Finally, Arndt maintains that the district court abused its discretion in refusing to apply the doctrine of offensive collateral estoppel[9] to preclude the defendants from relitigating issues decided adversely to them in an Alabama state court proceeding in *Tutwiler Drug Company v. City of Birmingham, Alabama,* No. CV 81 504–897 JDC (Ala.Cir.Ct.1983). The *Tutwiler* case also arose out of the passage of Resolution No. 1119–81. The state trial court found that the City did not have the authority to enact the resolution and acted arbitrarily and capriciously in passing the resolution.

In approving the use of offensive collateral estoppel in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court cautioned that one of the major arguments against application of the doctrine was the potential increase in litigation. If use of offensive collateral estoppel were sanctioned without restraint, potential plaintiffs would benefit from a decision adverse to the defendant but would not be bound by a judgment favorable to the defendant.[10] The plaintiff would therefore have no incentive to intervene in the first action against the defendant. Rather, the impetus would be to wait and hope that the first action by another plaintiff would result in a decision against the defendant. *Id.* at 329–30, 99 S.Ct. at 650–51, 58 L.Ed.2d at 561. For this reason, the Court adopted the general rule that the trial court, in the exercise of its broad discretion, should not permit offensive collateral estoppel when the plaintiff could easily have joined in the first action or when application of the doctrine would be unfair to the defendant. *Id.* at 331, 99 S.Ct. at 651–52, 58 L.Ed.2d at 562.

The record in this case establishes that Arndt was aware of the ongoing litigation between the City and Tutwiler Drug Company. One of the affidavits submitted by the City stated that Charles J. Arndt, III, president of Charles J. Arndt, Inc., testified in the earlier suit on behalf of Tutwiler Drug on two different occasions. Record, Volume 1, at 109. To countenance such practice so that Arndt could now use the decision in the *Tutwiler* case against the defendants would serve only to promote the "wait and see" attitude disapproved by the Court in *Parklane.* In these circumstances, we cannot say that the dis-

---

8. In its original complaint, Arndt alleged that the adoption of Resolution No. 1119–81 also constituted a denial of procedural due process. The September 1, 1983 order of the district court disposed of this allegation on its merits. The court found that procedural due process need not be provided in the context of a legislative act, such as passage of the resolution, and that even if Arndt was entitled to procedural due process, the requisite notice and an opportunity to be heard had been provided by the City. As Arndt did not raise the claim of a denial of procedural due process before this court, we will not address the issue.

9. Offensive collateral estoppel is used by a plaintiff seeking to foreclose the defendant from relitigating an issue which was decided adverse-ly to the defendant in a prior action with another party. Defensive collateral estoppel is an attempt to prevent a plaintiff from relitigating an issue which the plaintiff has previously litigated unsuccessfully against another defendant. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552, 559 n. 4 (1979).

10. It is contrary to the concept of due process to make a judgment binding on a litigant who was not a party to the first action and did not have the opportunity for a hearing. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552, 559 n. 7 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788, 800 (1971).

trict judge abused his discretion in refusing to accord collateral estoppel effect to the state court decision proffered by Arndt.

For these reasons, the judgment of the district court is AFFIRMED.