219 SOUTH ATLANTIC BOULEVARD INC., a Florida Corporation d/b/a Club Atlantis, Plaintiff,

v.

CITY OF FORT LAUDERDALE, FLORIDA, a Florida municipal corporation, Defendant.

No. 01–7389–CIV.

United States District Court, S.D. Florida.

Dec. 3, 2002.

Scott Walter Rothstein, Rothstein, Rosenfeldt, Dolin & Pancier, Fort Lauderdale, FL, for plaintiff.

Clark Jones Cochran, Jr., Hal B. Anderson, Billing, Cochran, Heath, Lyles

& Mauro, Fort Lauderdale, FL, for defendant.

## FINAL SUMMARY JUDGMENT FOR DEFENDANT

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendant City of Fort Lauderdale's Motion for Summary Judgment [DE 52], Plaintiff's Opposition [DE 74] and Defendant's Reply [DE 81]. The Court has carefully considered the motion and is otherwise fully advised in the premises.

Plaintiff 219 South Atlantic Boulevard, Inc., doing business as Club Atlantis, has brought this action against the City of Fort Lauderdale alleging violations of the U.S. Constitution and Florida statutory and common law. Specifically, Atlantis alleges claims of (1) violation of Article I, Section 10 of the U.S. Constitution, prohibiting the states and their political divisions from impairing the obligations of contracts; (2) breach of contract under Florida Law; (3) violation of Article I, Section 10 of the U.S. Constitution, prohibiting unlawful bills of attainder; (4) violation of substantive due process; (5) violation of procedural due process; (6) violation of equal protection; (7) violation of Florida Statute 562.45(2)(c), prohibiting discriminatory treatment of licensee under state beverage law; (8) promissory estoppel under Florida Law; (9) violation of the takings clause of the Fifth Amendment of the U.S. Constitution; and (10) violation of the First Amendment of the U.S. Constitution. Defendants have filed this Motion for Summary Judgment, arguing that there are no genuine issues of material fact requiring trial for their determination and that Defendant is entitled to judgment as a matter of law on all ten counts.

## I. BACKGROUND

Plaintiff operates a nightclub within the city of Fort Lauderdale, Florida, known as Club Atlantis. (Compl.¶ 5.) Club Atlantis is a 60,000–plus square foot entertainment complex, with a capacity of over 1,600 occupants, which opened in December, 1998. (Compl.¶ 17, 26.) Club Atlantis does not own the premises where it does business, but leases the premises from Swiss Beach Holdings, Inc. (Compl.¶ 8.) Club Atlantis caters primarily to a young adults age 18 and up. (Compl.¶ 27.) Plaintiff has invested over $2,000,000.00 since December 1998 in its acquisition and renovation of the premises. (Compl.¶ 29.) In addition, Plaintiff as spent thousands of dollars on advertising, promotion and booking fees, as well as paying a premium rent for use of the premises. (Compl.¶ 29.)

Club Atlantis is located within a special entertainment overlay district ("SEOD"). (Compl.¶ 24.) The owner of the Club Atlantis premises and the adjacent properties applied to the City of Fort Lauderdale ("City") to have this area designated as a SEOD. (Compl.¶ 24.) The owner of property in a SEOD has the right to designate one or more establishments within the district as a "late night licensed establishment," as long as the establishments are licensed by the state of Florida to sell alcohol. (Compl.¶ 20.) Businesses designated as late night licensed establishments are permitted to sell alcohol until 4:00 a..m., and their customers are permitted to consume any alcohol purchased before 4:00 a.m. until 4:30 a.m. (Compl.¶ 20.)

On or about September 6, 2000, the City passed Ordinance No. C–00–38, referred to as the "Midnight Ordinance". (Compl.¶ 38.) The Midnight Ordinance amends Section 5–29, City of Fort Lauderdale Code of Ordinances, to prohibit any vendor of alcoholic beverages in Fort Lauderdale (including designated late night licensed establishments) from selling alcohol after midnight, unless the vendor

applies for an extended hours permit.[1] (Compl.¶ 38.) An extended hours permit allows establishments within an SEOD to serve alcohol until 4:00 a.m. (Compl.¶ 38.) Plaintiff is the holder of an extended hours permit, and it serves alcohol until 4:00 a.m. (Compl.¶ 39.)

An extended hours permit may be suspended upon notice and an opportunity to be heard if negative impacts are caused to nearby residential or commercial neighborhoods due to the extra hours of operation following three Notices of Violation. (Compl.¶ 40.) A vendor is given the right to be represented by counsel, to present sworn testimony and to appeal the Commission decision to the Florida Circuit Court. (Compl.¶ 40.)

On October 3, 2000, the City enacted Section 5–36, City of Fort Lauderdale Code of Ordinances, which prohibited persons under the age of 21 from being admitted to bars, nightclubs and bottle clubs. (Compl.¶ 74.) On November 22, 2000, the City enacted Ordinance No. C–00–73, which amended Section 5–36 by changing the definition of restaurant. (Compl.¶ 81.)[2] Plaintiff alleges that as of November 22, 2002, the only persons aged 18, 19 and 20 who were allowed on the Club Atlantis premises were employees of Plaintiff. (Compl.¶ 88.) Club Atlantis managers were arrested on March 29, March 30 and April 1, 2001, for allegedly admitting underage patrons who were not employed at Club Atlantis in violation of Code Section 5–36. (Compl.¶ 89.) At the time of the March 30, 2001 arrest, the police closed down the club because there was no one to take control of the club. (Compl.¶ 93.)

In a City Commission meeting on July 10, 2001, the City Commissioners publicly discussed problems caused by Club Atlantis and action that could be taken to remedy those problems. (Compl.¶ 46.) Soon after that meeting, the City began to ticket cars parked after 2:00 a.m. in the City's lots near Club Atlantis. (Compl.¶ 49.) The City also removed the parking meters from the street behind Club Atlantis. (Compl.¶ 49.) Subsequently, beginning on or about July 14, 2001, the City has been closing the municipal parking lots in the vicinity of Club Atlantis at 2:00 a.m., and ticketing and towing cars not removed by 2:30 a.m. (Compl.¶ 49.)

## II. DISCUSSION

### A. *Summary Judgment Standard*

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

---

1. The Court will refer to this ordinance regulating the hours during which alcohol may be sold as "Section 5–29."

2. The Court will refer to this ordinance regulating the admittance of underage patrons to establishments that serve alcohol as "Section 5–36."

portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### B. *Impairing the Obligations of a Contract and Breach of Contract*

■ Count I of Plaintiff's Complaint alleges that Defendant's actions violated Article I, Section 10 of the U.S. Constitution, which prohibits the states and their politi-cal subdivisions from impairing the obligations of contracts. Count II of Plaintiff's Complaint alleges breach of contract. Defendant City of Fort Lauderdale asks that summary judgment be granted as to Counts I and II because Plaintiff has no contract with the City. Further, even if a contract does exist, Defendant argues that no breach has occurred.

■ For an enforceable contract to exist, there must be offer, acceptance, consideration and sufficient specification of terms so that the obligations involved can be ascertained. *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So.2d 297, 302 (Fla. 1st DCA 1999). The alleged contract that Plaintiff relies on in this case is the application of Swiss Beach Holdings, Inc. ("Swiss Beach"), Plaintiff's landlord, to operate a special entertainment overlay district within the City of Fort Lauderdale, and the document signed by the City Manager indicating that the application meets the criteria for a SEOD. *See* Plaintiff's Appendix of Exhibits Filed in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Appendix"), Exh. 5, 6. Plaintiff claims that it qualifies as either a third-party beneficiary or assignee to this alleged contract, and therefore has standing to sue for breach of contract.

The Court concludes that there are no genuine issues of material fact that would establish that a contract exists on which Plaintiff can rely for its claims in Counts I and II. Plaintiff alleges that the application by Swiss Beach for a zoning designation as a SEOD constituted an offer and that the document indicating that Swiss Beach meets the criteria for a SEOD constituted an acceptance. Plaintiff has presented no case law that supports its contention that an application for a zoning ordinance, even when approved, constitutes a contract between the applicant and the City. The

Court finds that completing an application for a zoning designation and submitting it to the City does not constitute an offer. In submitting such an application, the applicant is not proposing a deal for the City to accept if it finds the proposal is to its advantage. In contrast, the applicant submits the application in order to show that it meets the criteria for such a zoning designation. If the City finds that the applicant has met the criteria, as in the present case, the City approves the application and grants the applicant the requested zoning designation. This approval of the application does not constitute the acceptance of an offer; such an approval simply means that the applicant has met the requisite criteria. Furthermore, the City reserves the right to discontinue the SEOD designation if a number of conditions are not met. *See* Plaintiff's Appendix, Exh. 6.

■ As an alternative argument that a contract exists here, Plaintiff argues that the Swiss Beach Entertainment District can be considered a franchise and that a franchise in the form of an ordinance may be considered a contract. Plaintiff argues that the Swiss Beach Entertainment District has basically been given a monopoly by the City to provide clubs that stay open until 4:00 a.m. and can, therefore, be considered a franchise. Plaintiff claims that an analogy can be made between the Swiss Beach Entertainment District and a franchise to provide gas and electric service. However, Plaintiff has presented no evidence to support its argument that it operates as a monopoly. Plaintiff has presented no evidence that Club Atlantis is the only club that can sell alcohol until 4:00 a.m. Nor has Plaintiff presented evidence that the Swiss Beach Entertainment Dis-

trict is the only SEOD in the City of Fort Lauderdale. Furthermore, such municipal franchises are usually found in the context of public utilities.[3] The Court finds Plaintiff's analogy between public utilities and Plaintiff's nightclub unconvincing. Providing alcohol to patrons until 4:00 a.m. is quite different than providing gas, electric or transportation service to city residents.

■ Further, even if a contract between the parties exists, there are no genuine issues of material fact that would establish that the alleged contract was breached. Plaintiff argues that Defendant's actions of removing or limiting the parking surrounding Club Atlantis impairs Plaintiff's obligations under the alleged contract between Swiss Beach and the Defendant. According to Section 5–29, in considering whether to suspend an extended hours permit, the City may consider whether there is adequate off-street parking in relation to the demand created during the extra hours of operation. *See* Plaintiff's Complaint, Exh. D. However, Plaintiff has pointed to no language in any document that suggests that the City is responsible for providing a certain amount of parking for Club Atlantis patrons and employees. Therefore, because Plaintiff is responsible for providing its own parking for Club Atlantis, Defendant's actions in limiting available parking cannot constitute a breach of the alleged contract. For the same reasons, Defendant's actions cannot constitute a breach of the duty of good faith and fair dealing that is implied in every contract.

No genuine issues of material facts exist that would establish that a contract existed between Swiss Beach and Defendant City. Because no there are no genuine issues of

**3.** Plaintiff cited two cases to support its argument. *Pudlik v. Public Serv. Co. of Colorado,* 166 F.Supp. 921 (D.Col.1958) concerned gas, electric and transportation service, while

*Cleveland v. Cleveland City Ry. Co.,* 194 U.S. 517, 24 S.Ct. 756, 48 L.Ed. 1102 (1904) concerned transportation service.

material fact that would establish a contract, Plaintiff's claim of breach of contract as a third-party beneficiary or assignee must fail. Finally, even if there were a valid contract in this case, no genuine issues of material facts exist that would establish that a breach of the alleged contract occurred. Therefore, because a valid contract must exist in order for Plaintiff to prevail on Counts I and II, and a breach of that contract must have occurred under Count II, Defendant's Motion for Summary Judgment shall be granted as to Counts I and II.

### C. *Promissory Estoppel*

 The Defendant asks this Court to grant summary judgment as to Count VIII of Plaintiff's Complaint, which alleges a claim of promissory estoppel. To state a cause of action for promissory estoppel, a plaintiff must allege facts that, if taken as true, would establish 1) that the plaintiff detrimentally relied on a promise made by the defendant; 2) that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of the plaintiff or a third person; and 3) that injustice can be avoided only by enforcement of the promise against the defendant. *W.R. Townsend Contracting, Inc.*, 728 So.2d at 302 (Fla. 1st DCA 1999).

No genuine issues of material fact exist that would establish Plaintiff's claim of promissory estoppel. Plaintiff alleges the claim of promissory estoppel in its Complaint based on two alleged representations. First, Plaintiff alleges that Defendant represented that if it opened a restaurant/nightclub in the Swiss Beach Entertainment District, it could serve alcohol until 4:00 a.m. and its patrons could consume alcohol until 4:30 a.m. (Compl.¶ 145.) Second, Plaintiff alleges that the Defendant represented that sufficient municipal parking would be available to accommodate Plaintiff's employ-

ees and patrons throughout its lawful hours of operation. (Compl.¶ 146.)

Plaintiff's claim of promissory estoppel fails the first prong of the three-prong promissory estoppel test stated above. First, Plaintiff has failed to show that it has relied to its detriment on the alleged representation that it could serve alcohol until 4:00 a.m. and that its patrons could consume alcohol until 4:30 a.m. As Defendant points out and as Plaintiff has acknowledged, Plaintiff is still the holder of an extended hours permit; no proceedings to suspend the permit have been initiated against Plaintiff. Therefore, no detriment to Plaintiff has occurred. Plaintiff seems to rely on an alleged plan of Defendant's to start such proceedings in the future against Plaintiff. However, even if such proceedings are commenced against Plaintiff based on an alleged failure to comply with the ordinances related to the extended hours permit, Plaintiff has produced no evidence to show that Defendant represented to Plaintiff that it would not be required to comply with the ordinances. Plaintiff never argues that it was promised that it would be able to serve alcohol until 4:00 a.m. regardless of its compliance with the ordinances. Therefore, no genuine issues of material facts exist to establish that Plaintiff detrimentally relied on any representation by the City allowing Plaintiff to sell alcohol until 4:00 a.m.

Second, as discussed in the above section, Plaintiff has presented no evidence that the City represented to Plaintiff that it would provide parking for its patrons and employees. The Plaintiff states generally in its Complaint and in its Response to Defendant's Motion for Summary Judgment that the City originally represented to Plaintiff that sufficient municipal parking would be available. However, Plaintiff presents no actual evidence or even details concerning such statements. Nowhere in

either the application for the SEOD designation or the approval document signed by the City Manager does it state that the City is responsible for providing parking. Further, none of the ordinances related to the SEOD designation or the extended hours permit state that the City shall provide parking. Finally, Plaintiff has presented no statements by anyone connected with Club Atlantis that such representations were made. Therefore, because Plaintiff has failed to provide any evidence that such a representation was made, no genuine issues of material fact exist that would establish that the City represented to Plaintiff that it would provide parking for Club Atlantis.

### D. *Unlawful Bill of Attainder*

■ Defendant City of Fort Lauderdale asks that summary judgment be granted as to Count III, which alleges unlawful bill of attainder. An unlawful bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Selective Serv. Sys. v. Minnesota Public Research Group*, 468 U.S. 841, 847, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984). Therefore, three requirements must be met in order for an unlawful bill of attainder to exist: 1) specification of the affected persons; 2) punishment; and 3) lack of a judicial trial. *Id.*

Plaintiff argues that by enacting Section 5–36 and Section 5–29 that the City has enacted an unlawful bill of attainder against Plaintiff. First, Section 5–29 in no way singles out Plaintiff for punishment. *See* Plaintiff's Complaint, Exh. D. This ordinance regulates the hours that all vendors of alcohol are permitted to sell alcohol. The statement by Rosemarie Reed that the City's extended hours permits apply to approximately 255 establishments is undisputed. *See* Second Notice of Filing Documents in Support of Defendant's Motion for Summary Judgment, Declaration of Rosemarie Reed. Additionally, Plaintiff was given an extended hours permit under this ordinance, allowing it to sell alcohol until 4:00 a.m. No proceedings have been initiated to suspend this permit. This lack of action geared toward suspending the permit is inconsistent with Plaintiff's argument that the ordinance was enacted in order to inflict punishment on Plaintiff.

■ Similarly, Section 5–36, referred to as Patron Age Restrictions, in no way singles out Plaintiff for punishment. *See* Plaintiff's Complaint, Exh. I. Plaintiff claims that because the ordinance "defines restaurant in a highly detailed and absurd manner, which is only fashioned to exclude Plaintiff," the ordinance constitutes an unlawful bill of attainder. Plaintiff's Response, p. 25. However, the ordinance in no way refers to Club Atlantis, and it applies equally to all establishments serving alcohol. Further, prohibiting establishments from admitting underage patrons does not constitute punishment. Additionally, while it is true that Club Atlantis managers were arrested based on this ordinance, these arrests were made based on allegations that Club Atlantis was not complying with the ordinance. An ordinance of general application does not become an unlawful bill of attainder because a person is arrested based on noncompliance with that ordinance.

■ Finally, Plaintiff cites *Nixon v. Adm'r of General Services*, 433 U.S. 425, 478, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) to support the contention that the Supreme Court recognizes a test for punishment that looks strictly to the motivation of those enacting an ordinance. First, in that case, the Court recognized that "inquiring whether the legislative record evinces a congressional intent to punish" is one of several recognized tests of punish-

ment under the unlawful bill of attainder case law. *Id.* Second, as evidence of such intent to punish, Plaintiff has pointed only to the negative comments made by City Commissioners, other City employees and an angry citizen at one City Commissioner's meeting that took place on July 10, 2001. The Court does not dispute that these comments were not favorable to Club Atlantis. However, discussions on how to deal with citizen complaints about a nightclub, without anything further, are insufficient to constitute a legislative record that "evinces a congressional intent to punish." While these discussions did involve complaints about past incidents at Club Atlantis, the discussions were focused on how to prevent such incidents in the future. If legislatures were prohibited from passing laws to punish or prevent future occurrences of problematic acts that had occurred in the past, very few of our laws would past such muster. Therefore, because of the lack of any evidence that these ordinances single out Plaintiff for punishment, no genuine issues of material fact exist to establish that these ordinances constitute unlawful bills of attainder.

### E. *Substantive Due Process and Equal Protection*

■■■■ Defendant City of Fort Lauderdale asks this Court to grant summary judgment as to Count IV, Substantive Due Process, and Count VI, Equal Protection. Under both substantive due process and equal protection, when the legislation being challenged does not target a protected class, the rational basis test is applied. *Georgia Manufactured Housing Assn., Inc., v. Spalding County,* 148 F.3d 1304, 1307 (11th Cir.1998); *Restigouche, Inc. v. Jupiter,* 59 F.3d 1208, 1214 n. 6 (11th Cir.1995). Under this test, a court gives great deference to economic and social legislation. *Gary v. Warner Robins,* 311 F.3d 1334, 1339 (11th Cir.2002). The first step

in determining whether legislation survives the rational basis test is identifying a legitimate government purpose which the governing body could have been pursuing. *Restigouche,* 59 F.3d at 1214. The second step of the rational basis test asks whether a rational basis exists for the enacting government body to believe that the legislation would further the hypothesized purpose. *Id.* The proper inquiry is concerned with the existence of a conceivably rational basis, not whether that basis is actually considered by the legislative body. *Id.* The rational basis standard is highly deferential. *Gary,* 311 F.3d 1334, 1339. A court will not overturn the legislation "unless the varying treatment of different...persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Id.* (quoting *Price v. Tanner,* 855 F.2d 820, 823 (11th Cir.1988)). Further, in order to prevail on an equal protection claim, the plaintiff must show that the government treated the plaintiff differently than other similarly situated persons. *See, e.g., Gary,* 311 F.3d 1334, 1337.

■■■■ Plaintiff alleges that various ordinances and actions by the City violated its substantive due process and equal protections rights. First, Section 5–36, which regulates the admittance of underage patrons in establishments that serve alcohol, is rationally related to the purpose of curbing underage drinking and minimizing the negative effects of the presence of underage persons in establishments where alcohol is sold. Plaintiff alleges that the detailed definition of restaurant in that ordinance was designed specifically to include Plaintiff in that definition. However, the ordinance also applies to any other establishment that fits within the definition, and Plaintiff has presented no evidence that the admittance

of underage patrons in other such establishment is being overlooked by the City. Similarly, Section 5–29, which regulates the hours that alcohol may be sold, is rationally related to the goal of prevention of crime and public disruption. It is rational that the later in the night people are consuming alcoholic beverages in nightclubs and other establishments, the more likely crime and especially public corruption will occur. Further, Plaintiff has failed to present evidence to contradict the statement by City Prosecutor, Scott Walker, that the City has uniformly applied and enforced these ordinances against all persons and businesses and that law enforcement has visited other establishments throughout Fort Lauderdale, including the nightclubs Chili Pepper, Roxy and Trio's, in order to verify compliance with the ordinances. *See* Second Notice of Filing Documents in Support of Defendant's Motion for Summary Judgment, Declaration of Scott Walker. Plaintiff has presented nothing beyond counsel's assertions to support that other establishments are being treated different with regard to these ordinances. Therefore, no genuine issues of material fact exist that would establish that the City's ordinances violate Plaintiff's substantive due process or equal protection rights.

 Second, the Defendant City's action of limiting parking in the area surrounding also meets the rational basis test. There are several plausible reasons why the City might have wanted to close the parking lots at 2:00 a.m. As the Plaintiff notes, the interest articulated by the Defendant is the prevention of crime and public disruption. The Court finds that limiting parking is rationally related to such a goal. It is plausible that the later

people are able to utilize the parking lots, congregating there after consuming alcohol for several hours in nightclubs, the more likely crime and public disruption will occur. Plaintiff states that the hours of municipal parking lots in other special entertainment overlay districts have not been limited.[4] However, as long as there exists a legitimate reason related to the act of limiting the parking in this particular lot, the City's actions will survive the rational basis test. Therefore, no genuine issues of material fact exist to establish that the Defendant's decision to limit parking violates Plaintiff's substantive due process or equal protection rights.

 Further, Plaintiff argues that the City's decision to withdraw off-duty Fort Lauderdale police officers from the Club Atlantis premises is not rationally related to the goal of prevention of crime and public disruption. However, the Chief of Police, in his letter to Daniel Kerns, explains that the opportunity to utilize off-duty Fort Lauderdale Police Officers in a security capacity is a privilege.[5] Plaintiff has failed to dispute that the opportunity to use off-duty officers is anything more than a privilege. Additionally, the Chief states that the decision not to renew Club Atlantis' permit to utilize off-duty officers, requiring Plaintiff to supply security from another source, was partly due to the inordinate amount of police required by Club Atlantis. Plaintiff has not disputed this reason but only states in its Response that the this decision cannot be related to the goal of prevention of crime and public disruption. However, it is logical to believe that the inordinate amount of officers required by Club Atlantis kept off-duty officers from other areas where they were

4. The Court notes that Plaintiff does not cite any evidence to support its allegation that other municipal parking lots in SEOD areas have not limited their parking.

5. Such off-duty officers are paid by Club Atlantis for their security services. *See* Plaintiff's Complaint ¶ 63.

needed in the prevention of crime and public disruption. Therefore, no genuine issues of material fact exist to establish that the Police Chief's decision to withdraw off-duty Fort Lauderdale Police Officers violated Plaintiff's substantive due process or equal protection rights.

▄▄▄ Finally, Plaintiff argues that the City's process of reviewing Plaintiff's applications for various permits violates their equal protection rights. In the present case, Plaintiff has failed to present more than a mere scintilla of evidence that Plaintiff was treated differently by the City with regard to building permits than those similarly situated. The only evidence Plaintiff presents to support its claim that it was treated differently is the statement in the Unsworn Declaration of Alan Rohloff that, in monitoring the progress of other permit applications online, he found that other permit applications were being passed more quickly than Plaintiff's applications. *See* Plaintiff's Appendix, Exh. 2. As Defendant points out, Plaintiff does not specifically identify any other entity that was treated differently than Plaintiff. Nor has Plaintiff given any specifics or presented any information to show that these permit applications were similar in nature to Plaintiff's.

Plaintiff has had ample opportunity to conduct discovery, and the fact that other permit applications were passed more quickly, without anything further to indicate that Plaintiff was actually being treated differently, does not amount to more than a mere scintilla of evidence to support that it was treated differently than those similarly situated. Therefore, no genuine issues of material fact exist that would establish that Plaintiff was treated differently than those similarly situated with regard to building permit applications.

Because no genuine issues of material fact exist that would establish that Plaintiff's substantive due process and equal protection rights have been violated, the Court grants Defendant's Motion for Summary Judgment as to Counts IV and VI.

### F. *Discriminatory Treatment of Licensee Under State Beverage Law, Fla, Stat. Section 562.45(2)(c)*

Defendant City of Fort Lauderdale asks the Court to grant summary judgment as to Count VII, which alleges discriminatory treatment of a licensee under state beverage laws. The State Beverage Law states that "a local government, when enacting ordinances designed to promote and protect the general health, safety and welfare of the public, shall treat a licensee in a nondiscriminatory manner and in a manner that is consistent with the manner of treatment of any other lawful business transacted in this state." Fla. Stat. Section 562.45(2)(c). Plaintiff's arguments that Defendant violated section 562.45(2)(c) are identical to its arguments that Defendant violated Plaintiff's equal protection rights. Therefore, based on the analysis in the above section, no genuine issues of material fact exist that would establish that Defendant violated section 562.45(2)(c) by treating Plaintiff in a discriminatory manner with regard to its ordinances regulating alcohol.[6]

### G. *Procedural Due Process*

▄▄▄ Defendant City of Fort Lauderdale asks the Court to grant summary judgment as to Count V, which alleges a violation of procedural due process. The Fourteenth Amendment of the U.S. Constitution provides that a state government may not deprive any person of "life, liberty, or property without due process of law." Thus, to establish a procedural due

---

**6.** The analysis under Section D, Unlawful Bill of Attainder, regarding whether Plaintiff has been singled out by the City, is also relevant here.

process claim, a plaintiff must first show the deprivation of a liberty or property interest protected by the Due Process Clause. *Cypress Ins. Co. v. Clark,* 144 F.3d 1435, 1436 (11th Cir.1998). However, damages to a plaintiff's business reputation are only recoverable under § 1983 if those damages were incurred as a result of government action significantly altering the plaintiff's constitutionally recognized rights. *Id.* at 1438. When the government must provide due process, certain basic safeguards such as notice and an opportunity to be heard must be provided. *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

 First, Plaintiff alleges that it has been deprived of its right to sell alcohol until 4:00 a.m., as provided by the extended hours permit in Section 5–29, without due process of law. Plaintiff claims that the Defendant is going through the back door in order to deprive Plaintiff of due process by limiting parking in the area and removing off-duty Fort Lauderdale Police Officers from Club Atlantis. However, no proceedings have been initiated to suspend Plaintiff's extended hours permit. Additionally, several protections are in place to protect Plaintiff in the event that proceedings are initiated to suspend its extended hours permit. Section 5–29 provides for notice, a hearing, the right to present sworn testimony, the right to be represented by counsel and the right to appeal to circuit court. *See* Plaintiff's Complaint, Exh. D. Plaintiff argues that an injunction is appropriate here to prevent Defendant from depriving Plaintiff of its due process rights in the future. However, an injunc-

tion prohibiting Defendant from depriving Plaintiff of its due process rights in the future is inappropriate in this case where there has been no showing that these procedural protections will not be applied to Plaintiff in the event its extended hours permit is challenged. Therefore, no genuine issues of material fact exist that would establish a deprivation of Plaintiff's due process in relation to its extended hours permit.

 Second, Plaintiff alleges that its property right in its business and in the goodwill of its business has been deprived without due process of law. Plaintiff argues that its business and goodwill of its business has been harmed as a result of "bogus" arrests, which has caused prospective employees to be cautious about working at Club Atlantis. Plaintiff seems to be referring to arrests made based on alleged violations of Section 5–36, Patron Age Restrictions. *See* Plaintiff's Complaint, Exh. I. This ordinance makes it unlawful for persons under the age of twenty-one (21) to enter or remain in any alcoholic beverage establishment. This restriction does not apply to persons employed by or at the alcoholic beverage establishment. First, Plaintiff has presented no testimony from either customers or prospective or current employees that the arrests have hurt the goodwill of its business by causing a loss of customers or employees.[7] Second, Plaintiff has presented no evidence that these arrests were made without probable cause, that is, that the arrests were "bogus." Plaintiff has presented no evidence to contradict the many statements of underage persons that they were paying customers, as opposed to employees, of Club Atlantis.

---

7. The only evidence presented by Plaintiff on this subject is the declaration of Daniel Kerns, Director of Operations of Club Atlantis. *See* Plaintiff's Appendix, Exh. 1. He states in his declaration that the arrests have caused people to believe that Club Atlantis is either out of business or will soon be out of business and that both patrons and that both employees and patrons who witnessed arrests asked if they risked by arrested by being in Club Atlantis.

*See* Defendant's Third Notice of Filing Documents in Support of Defendants' Motion for Summary Judgment. Without any evidence that the arrests were made without probable cause, Plaintiff is unable to support its argument that it was deprived of business due to the closing of the club for several hours subsequent to the arrests or that it has been deprived of the goodwill of its business due to the arrests. Thus, no genuine issues of material fact exist that would establish that Plaintiff has been deprived of its business and the goodwill of its business without due process of law.

## H. *Takings Clause of Fifth Amendment*

Defendant City of Fort Lauderdale asks the Court to grant summary judgment as to Count IX, which alleges a taking in violation of the Fifth Amendment of the U.S. Constitution. The takings clause of the Fifth Amendment states that private property shall not be taken for public use without just compensation. *Charles J. Arndt, Inc. v. Birmingham,* 748 F.2d 1486, 1490 (11th Cir.1984). This clause is made applicable to the states through the due process clause of the Fourteenth Amendment. *Id.* A governmental action short of acquisition of title or permanent physical occupation can constitute a taking where its effects deprive the owner of all or most of his use or interest in the property. *Id.* Physical invasions of or physical interference with property may be considered a taking. *Id.* However, not every governmental action interfering with a property interest is a taking entitling the owner to compensation. *Id.*

The Plaintiff seems to be arguing that it is entitled to just compensation based on the Defendant's limiting of parking and based on the shutdown of Club Atlantis following the arrest of its manager. First, Plaintiff can claim no taking without just compensation based on the

Defendant's decision to limit its parking in its lots near Club Atlantis. Abutting property owners have no valuable right to parking spaces in the street they abut. *Orlando v. Cullom,* 400 So.2d 513, 516 (Fla. 5th DCA 1981). In the present case, Plaintiff has no private property right to the municipal parking lots in the area surrounding Club Atlantis. Here, the parking lots being closed at 2:00 a.m. do not even abut Plaintiff's property; they are in the general area surrounding Club Atlantis. Therefore, no genuine issues of material fact exist that would establish an unconstitutional taking based on the City's decision to close its parking lots at 2:00 a.m.

Second, Plaintiff can claim no taking without just compensation based on the closure of Club Atlantis following the arrest of David Edwards, manager of Club Atlantis. The Plaintiff does not dispute the fact that the City was required to close down Club Atlantis if no manager or employee was available to manage or control the club. Instead, Plaintiff argues that, because the police indicated that they would arrest any manager on duty, the City used the threat of arrest to keep any manager from coming forward and taking control of the nightclub.

Plaintiff relies on *Reed v. Shorewood,* 704 F.2d 943 (7th Cir.1983) to support its argument. However, in that case, it was uncontradicted that customers and employees were arrested on baseless charges. In the present case, as discussed above, Plaintiff has presented no evidence that the arrests were made without probable cause or that the police would have had no probable cause to arrest any other manager on duty. Without any such evidence, there exists no genuine issues of material fact that would establish that an unconstitutional taking has occurred with regard to the closing of Club Atlantis following the arrest.

## I. *First Amendment*

 Defendant City of Fort Lauderdale asks the Court to grant summary judgment as to Count X, which alleges a violation of the First Amendment of the U.S. Constitution. The First Amendment's protection of freedom of speech applies to the states through its incorporation into the due process clause of the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). The government may impose reasonable restrictions on the time, place and manner of protected speech as long as the restrictions 1) are justified without reference to the content of regulated speech; 2) are narrowly tailored to serve a significant governmental interest; and 3) leave open ample alternatives channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The regulation need not be the least restrictive or least intrusive means of serving the government's interest. *Id.* at 798, 109 S.Ct. 2746. In *Ward*, the city's requirement that performers presenting music in a bandshell in Central Park use sound-amplification equipment and a sound technician provided by the city, thereby regulating the volume of the music, was upheld as a valid time, place and manner restriction. *Id.* at 784, 803, 109 S.Ct. 2746.

 Plaintiff argues the City's ordinances regulating the sale of alcohol interfere with its protected First Amendment right to present music. First, the ordinances are content-neutral in that they only regulate the hours establishments are permitted to sell alcohol and the admittance of underage person to establishments that sell alcohol. These ordinances in no way regulate the content of the music that may be played or performed in any establishment.

 Second, the City's ordinances are narrowly tailored to serve a significant governmental interest. The ordinance regulating the hours during which alcohol may be sold serves the significant governmental interest of minimizing late night disruptions in surrounding neighborhoods. Additionally, the patron age restrictions serve the significant governmental interest of minimizing the negative effects of the presence of underage persons in establishments where alcohol is sold. The Court finds that both ordinances are narrowly tailored to serve their respective purpose.

 Third, the ordinances leave open ample alternative channels of communication. As stated before, the ordinances in no way limit or regulate the music that can be presented in Club Atlantis. In fact, the ordinances in the present case are even more removed from the regulation of speech than the regulations at issue in *Ward* where the volume of the music was being controlled by the city. Also, Plaintiff has presented no arguments or evidence that person aged 18–21 are unable to hear elsewhere the music presented at Club Atlantis.

Plaintiff further argues that, while the ordinances may be content-neutral on their face, the ordinances have been applied to Plaintiff in a discriminatory manner. This argument is addressed above under the Substantive Due Process and Equal Protection section. First, no proceedings have been commenced by the City to suspend Plaintiff's extended hours permit, which allows it to sell alcohol until 4:00 a.m. Second, no evidence has been presented by Plaintiff to support the allegation that it has been treated differently than other establishments with regard to the patron age ordinance. Therefore, no genuine issues of material fact exist that would establish that Plaintiff's First Amendment rights have been violated.

## III. CONCLUSION

Based on the foregoing analysis, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant City of Fort Lauderdale's Motion for Summary Judgment is hereby **GRANTED**.

2. Judgment is hereby entered for Defendant City of Fort Lauderdale and against Plaintiff 219 South Atlantic Boulevard, Inc., doing business as Club Atlantis, as to Counts I, II, III, IV, V, VI, VII, VIII, IX and X, and Plaintiff shall take nothing.

3. Any remaining pending motions are hereby **DENIED as moot**;

4. The Clerk may close this case.